<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                                :

| | |
|---|---|
| **ANNA CHARLTON and GARY FRANCIONE,** | : |
| | : |
| **Plaintiffs,** | :   **No. 11-6572 (FSH)** |
| | : |
| **v.** | : |
| | : |
| **WELLS FARGO BANK, N.A., et al.,** | :   <u>**REPORT AND RECOMMENDATION**</u> |
| | : |
| **Defendants.** | : |

_____:

### I.   I<small>NTRODUCTION</small>

This matter comes before the Court on four motions:  (1) Defendant Field Asset Services' ("FAS") motion for summary judgment [D.E. 106]; (2) the motion of Wells Fargo, N.A., American Home Mortgage Servicing, Inc. and Power Reo Management Services, Inc. (collectively the "Wells Fargo Defendants") for summary judgment [D.E. 107]; (3) Plaintiffs' motion for partial summary judgment [D.E. 108]; and (4) Defendants Glenn Miller and Century 21 Gemini, LLC's (collectively the "Century 21 Defendants") cross-motion for summary judgment [D.E. 117].

Pursuant to Local Civil Rule 72.1, the Honorable Faith S. Hochberg, United States District Judge, referred these motions to this Court for Report and Recommendation.  The Undersigned considered the motions without oral argument pursuant to Fed. R. Civ. 78 and L. Civ. R. 78.1.   For the reasons set forth below, the Undersigned respectfully recommends that the District Court grant Plaintiffs' motion for partial summary judgment [D.E. 108], and deny Defendants' motions [D.E. 106, 107] and cross-motion [D.E. 117] for summary judgment.

## II.   FACTUAL BACKGROUND

Plaintiffs, a husband and wife, allege that on or about August 17, 2010, Plaintiff Anna Charlton slipped and was injured while the Plaintiffs were viewing residential property with Defendant Glenn Miller, who was a real estate agent.[1]  See Am. Compl. ¶¶ 1-2, 19-22, 26, D.E. 30.  Plaintiffs allege the accident happened because of a dangerous condition on the property.  See Am. Compl. ¶¶ 1-2, 7, 19-22, D.E. 30.  Specifically, Plaintiffs allege that while viewing the Property's second floor bathroom, Plaintiff Charlton slipped on a piece of broken glass, hit her face and body, and suffered severe and permanent injury.  See id.; Dep. of Plaintiff Charlton, dated June 19, 2013, 1T64:7-12.[2]  Plaintiffs had previously viewed the property on or about August 15, 2010.  Defendant Glenn Miller's Ans. to Pl. Interrog. No. 14, Exh. 13 to Decl. of Henry F. Furst ("Furst Decl."), D.E. 108-17.

The property was located at 379 Montrose Street, South Orange, New Jersey (the "Property").  See Am. Compl. ¶ 19, D.E. 30.  During the relevant time period, Wells Fargo Bank, N.A. ("Wells Fargo") owned the Property.  See id. at ¶ 3.  The Property was vacant, as it was a foreclosed property.  See Dep. of Glenn Miller, July 11, 2013, 2T46:7-15; 2T51:11-2T52:22.[3]  Defendant American Home Mortgage Servicing, Inc. ("AHMS") managed the Property pursuant to a Pooling and Servicing Agreement ("Pooling Agreement") with Wells

---

[1] The Amended Complaint alleges that Plaintiffs viewed the Property on August 16, 2010.  See Am. Compl. ¶ 20, D.E. 30.  In Plaintiffs' Opposition to the Wells Fargo Defendants' motion for summary judgment, Plaintiffs assert that due to a typographical error, the Complaint alleges that Plaintiff Charlton sustained her injury on August 16, 2010, when she actually suffered the injury on August 17, 2010.  See Pl. Opp. Br., D.E. 127 at 1, ¶ 2.  The Court will not offer any opinion about that discrepancy, since it does not affect its decision on any of the summary judgment motions.

[2] "1T" refers to Plaintiff Charlton's deposition transcript, dated June 19, 2013.

[3] "2T" refers to Defendant Glenn Miller's deposition transcript, dated, July 11, 2013.

Fargo, dated April 1, 2007.  See id. at ¶ 4; Pooling Agreement, Exh. 4 to Furst Decl., D.E. 108-8;

Wells Fargo Ans. to Pl. Interrog. Nos. 13, 14, 15, Exh. 9 to Furst Decl., D.E. 108-13.  AHMS

entered into an agreement with FAS to perform various services at the Wells Fargo Defendants'

foreclosed properties.  See Wells Fargo Counter-Statement of Undisputed Facts at ¶ 5, D.E. 124;

see also Residential Property Preservation, REO Eviction, Maintenance and Repair Service

Agreement ("FAS Agreement"), Exh. A to Gregory Pennington Declaration ("Pennington

Decl."), D.E. 124; Affidavit of Sarah Hunter ("Hunter Aff.") at ¶ 4, Exh. D to Cert. of Keith

Harris ("Harris Cert."), D.E. 106.  Under that agreement, FAS performed various services at the

Property, including, among other things, re-keying, securing openings, debris removal, lawn

maintenance, janitorial service, winterization, pool maintenance, and repair and rehabilitations.

See FAS Agreement, Exh. A to Pennington Decl., D.E. 124.  FAS hired two subcontractors,

Defendants Dirty Demolition Services ("Dirty Demolition") and Accura-Tec (collectively the

"Subcontractors"), to perform services at the Property on its behalf.  See FAS Statement of

Undisputed Facts at ¶ 12; see also Vendor Qualification Packet, Exh. E to Harris Cert., D.E. 106;

see also Work Orders for Accura-Tec and Dirty Demolition, Exh. F. to Harris Cert.

Though the Property was bank-owned and thus vacant, on July 14, 2010, the South

Orange Police Department responded to a burglary call at the Property.  See Incident Report,

dated July 14, 2010, Exh. 12 to Furst Decl., D.E. 108-16.  The police noted signs that a squatter

had been living in the Property and caused damage to it.  See id.

III.   **PROCEDURAL BACKGROUND**

Plaintiffs filed suit on November 8, 2011.  See Compl., D.E. 1.  They filed an Amended

Complaint on June 25, 2012.  See  Amended Compl., D.E. 30.  Count I of the Amended

Complaint seeks damages for injuries that Plaintiff Anna Charlton alleges she suffered from the

fall.  See id. at ¶ 24.  Count II seeks damages for Plaintiff Gary Francione for loss of consortium. See id. at ¶ 26.

Following the completion of discovery, various parties have moved for summary judgment.  FAS has filed a motion for summary judgment seeking dismissal of the entire Amended Complaint.  See FAS Mot. for Sum. Judgment, D.E. 106.  In its motion, FAS argues that it owed no duty to Plaintiffs.  See id. at 9-10.

The Wells Fargo Defendants also have moved for summary judgment.  See Wells Fargo Defs. Mot. for Sum. Judgment, D.E. 107.   Essentially, Wells Fargo, AHMS and Power Reo Management Services, Inc. seek judgment as a matter of law that they did not owe Plaintiffs a duty of care.  See id. at 15.  The Wells Fargo Defendants also seek summary judgment on the issue of notice, that is, whether the Wells Fargo Defendants were on notice of the alleged dangerous condition.  See id. at 19.  Finally, the Wells Fargo Defendants challenge Plaintiffs' claims on the issue of causation.  See id. at 22-23.

Plaintiffs also have filed a motion for partial summary judgment.  See Pl. Mot. for Part. Sum. Judgment, D.E. 108.  Plaintiffs seek judgment solely on the issue of duty, that is, Plaintiffs ask the Court to determine as a matter of law that each Defendant owed Plaintiffs a duty of care to prevent against reasonably foreseeable injury.  See id. at 7.

After Plaintiffs filed their motion, the Century 21 Defendants filed a cross-motion for summary judgment.  See Century 21 Defs. Cross-Mot. for Sum. Judgment, D.E. 117.  In their motion, the Century 21 Defendants challenge whether Plaintiffs can establish a claim for negligence.

**IV.   STANDARD**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In other words, a motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson, 477 U.S. at 247; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material if it might affect the outcome of the case, and an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007). All facts and inferences must be construed "in the light most favorable to the nonmoving party." Peters v. Del. River Port Auth. of Pa. & N.J., 16 F.3d 1346, 1349 (3d Cir. 1994). Where the non-moving party bears the burden of proof on an issue, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325.

The party seeking summary judgment must initially provide the Court with the basis for its motion. Celotex Corp., 477 U.S. at 323. This showing requires the moving party either to establish that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the non-moving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden of proof. Id. at 322-23.

Once the party seeking summary judgment has carried this initial burden, the burden then shifts to the non-moving party.  Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).

To avoid summary judgment, where the non-moving party will bear the burden of proof at trial on a dispositive issue, he or she must demonstrate "specific facts showing that there is a genuine issue for trial."  Celotex Corp., 477 U.S. at 324.  The opposing party must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Id. at 587 (internal quotations and citation omitted).  In addition, summary judgment may be granted if the nonmoving party's "evidence is merely colorable, or is not significantly probative."  Anderson, 477 U.S. at 249-50 (citations omitted).

## V. MOTIONS

### A. FAS's Motion for Summary Judgment

#### a. Arguments

The Court begins its analysis of the four pending motions by considering FAS's summary judgment motion.  First, FAS asserts that Plaintiffs cannot prove that it was negligent because FAS did not owe Plaintiffs a duty of care.  See FAS Mot. for Sum. Judgment at 9, D.E. 106.  FAS contends that AHMS hired FAS to "re-key locks, remove exterior debris, provide initial lawn service, and secure the property in question."  See id.  FAS, therefore, asserts that it had neither a relationship with Plaintiffs, an ownership interest in the Property, nor any authorization to repair or maintain the Property, at least beyond the FAS Agreement.  See id.

Second, FAS contends that if Plaintiffs seek to hold FAS vicariously liable for any negligent acts committed by the Subcontractors, Dirty Demolition and Accura-Tec, then FAS cannot be held liable, because both Subcontractors were independent contractors, thereby absolving FAS of liability under New Jersey law.  See id. at 11-12.  FAS asserts that it neither supervised the Subcontractors' professional decisions, nor provided direction for the completion of their services.  See id.  Rather, FAS "merely supervised the independent contractors to be sure the end result was accomplished."  See FAS Reply Br. at 4.  FAS asserts that its supervisory role did not include controlling how the Subcontractors performed their duties under the parties' agreement.  Id.

The Wells Fargo Defendants oppose FAS's motion on two grounds.  First, they contend that FAS retained control of the Subcontractors, and thus, that FAS is liable for the negligent acts of those Subcontractors.  See Wells Fargo Defs. Br. at 10-11, D.E. 124.  Specifically, the Wells Fargo Defendants argue that FAS controlled and directed the Subcontractors' work on the Property.  See id. at 10.  For that argument, Wells Fargo relies on FAS's Vendor Qualification Packets, which allegedly outline the relationship between FAS and its Subcontractors.  See Vendor Qualification Packets, Exh. E to Harris Cert, D.E. 106.

Second, the Wells Fargo Defendants assert that FAS owed AHMS a contractual duty to: (1) perform all work in a workmanlike manner, and (2) indemnify AHMS for any claims arising out of the negligent acts of FAS or its Subcontractors.  See id. at 11-12.  Thus, the Wells Fargo Defendants argue that they discharged their duty to FAS and its vendors.  See id. at 13. Moreover, the Wells Fargo Defendants claim that if the Court finds that FAS owed Plaintiff a duty, and failed to discharge it, then summary judgment should be denied.  See id.

Plaintiffs also oppose FAS's motion for summary judgment.  Plaintiffs first dispute that FAS did not owe a duty of care.  See Pl. Opp. to Mot. for Sum. Judgment at 6, D.E. 126.  Specifically, Plaintiffs assert that whether Plaintiffs were in privity with FAS is irrelevant.  See id.  Instead, they argue, New Jersey case law requires the balancing of various factors to determine the liability of an independent contractor to non-parties to a contract.  See id. (citing Raimo v. Fischer, 372 N.J. Super. 448 (App. Div. 2004)).  Plaintiffs contend that the Raimo factors suggest that FAS owed Plaintiffs a duty to exercise reasonable care.  See Pl. Opp. to Mot. for Sum. Judgment at 7, D.E. 126.

Next, Plaintiffs argue that summary judgment is inappropriate because a factual question exists as to whether FAS breached its duty of care.  See id. at 8.  Plaintiffs contend that the arguments in FAS's moving papers are relevant to the question of whether FAS breached its duty.  See id. at 8-9.  Plaintiffs argue that the record contains disputes as to whether FAS breached a duty, which requires the denial of summary judgment.  See id.

Finally, Plaintiffs dispute that FAS cannot be held vicariously liable for the acts of the Subcontractors.  See id. at 12.  The record, according to Plaintiffs, establishes that FAS maintained sufficient control over the Subcontractors for the doctrine of respondeat superior to apply here.  See id. at 13.  Plaintiffs point to the Vendor Qualification Packets, which they argue identify services the Subcontractors provided with FAS's oversight.  See id.  Further, Plaintiffs assert that FAS can be held liable for the negligent hiring of their Subcontractors.  See id. at 14.

### b. Analysis[4]

New Jersey courts have defined negligence as "conduct 'which falls below the standard established by law for the protection of others against unreasonably great risk of harm.'"  Harpell v. Public Service Coordinated Transport, 20 N.J. 309, 316 (1956).

It is well-settled that "negligence is a fact which must be proved and which will never be presumed."  Meny v. Carlson, 6 N.J. 82, 91 (1950).  The occurrence of an accident, without more, is insufficient to raise a presumption of negligence.  Id.  Instead, negligence must be established by some competent form of proof.  Overby v. Union Laundry Co., 28 N.J. Super. 100, 104 (App. Div. 1953); see also Callahan v. Nat'l Lead Co., 4 N.J. 150, 153 (1950).  To prove a claim for negligence, a plaintiff must establish that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; and (3) that the defendant's breach proximately caused the plaintiff's injury.  Brown v. Racquet Club of Bricktown, 95 N.J. 280, 288 (1984); Filipowicz v. Diletto, 350 N.J. Super. 552, 558 (App. Div. 2002); Anderson v. Sammy Redd and Assoc., 278 N.J. Super. 50, 56 (App. Div. 1994). As the party asserting the claim, the plaintiff bears the burden of proving each element of a negligence claim.  Hansen v. Eagle-Picher Lead Co. 8 N.J. 133, 140 (1951).

Whether a party has a duty is a question of law to be "properly decided by the court, not the jury, and is largely a question of fairness or policy."  Wang v. Allstate Ins. Co., 125 N.J. 15 (1991).  In making such a determination, the court must weigh several factors, including "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise

---

[4] This Court has jurisdiction over this action based on 28 U.S.C. § 1332.  Where jurisdiction is premised on diversity of citizenship, a federal court generally applies the choice-of-law rules of the jurisdiction in which it sits.  Garcia v. Plaza Oldsmobile Ltd., 421 F.3d 216, 219 (3d Cir. 2005).  Here, the parties agree that New Jersey substantive law governs this matter.

care, and the public interest in the proposed solution." Hopkins v. Fox & Lazo Realtors, 132

N.J. 426, 439 (1993); see also Raimo, 372 N.J. Super. at 456-57 (applying factors set forth in

Hopkins in determining whether a contractor owed a duty of care).

### 1.  **FAS had a legal duty of care**

In this case, the Court concludes that FAS owed Plaintiffs a duty of care to prevent

against reasonably foreseeable injury.  FAS disputes that it was hired to maintain the property,

and asserts that it was hired to perform limited services on the Property on behalf of AHMS.  See

FAS Mot. for Sum. Judgment at 9, D.E. 106; Hunter Aff. at ¶ 4, Exh. D to Harris Cert., D.E. 106.

However, the factual record does not support FAS's argument.  Indeed, FAS entered into an

agreement with AHMS to provide various site-maintenance services on the Property.  See FAS

Agreement, Exh. A to Pennington Decl., D.E. 124.  The terms of that agreement clearly establish

that FAS was responsible for servicing and maintaining the Property.  Specifically, FAS agreed

to perform various repair and preservation services, including, among other things, winterization

of the Property, debris removal, pool maintenance, janitorial services, and securing the Property.

These terms plainly establish that FAS contracted to maintain the Property by performing these

services.  See FAS Agreement, Exh. A to Pennington Decl., D.E. 124.

Particularly important here is the provision of the FAS Agreement regarding the janitorial

services that FAS agreed to perform.  That provision reads, in pertinent part:

> Janitorial services will be conducted to bring the property to a
> marketable condition for showing to prospective buyers.  Vendors
> will be directed to complete janitorial services within (3) business
> days from the date the work is requested by the Client or Client's
> agent.  The janitorial scope includes sweep, mop and vacuum of all
> floors, scrub all bowls and basins as well as wipe down all counter
> tops appliances and cabinets.

FAS Agreement at 13, Exh. A to Pennington Decl., D.E. 124.  A plain reading of this language demonstrates that the Agreement required FAS to ensure the Property was clean to show it to prospective buyers, such as by routinely sweeping, mopping and vacuuming it.  Also, the FAS Service History indicates that Accura-Tec performed such services on behalf of FAS on several occasions, including a service just a few days before the alleged slip and fall accident (Aug. 11, 2010).  See FAS Service History, Exh. B to Pennington Decl., D.E. 124.   Together, these facts establish that FAS undertook the responsibility of ensuring that the property was maintained.  Having agreed to conduct these services, FAS had a duty to exercise care to prevent against reasonably foreseeable injury.  See Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 311-12 (2002) (recognizing that relationships created by contract can give rise to affirmative duties such as the duty to use reasonable care).

Further, as the company responsible for maintaining the Property, FAS was in a position to inspect it and remedy any dangerous conditions.  Here, the record suggests that FAS had opportunity to do so before the alleged incident.  Several times between July 14, 2010, when a squatter was discovered on the Property, and August, 2010 when the alleged slip and fall occurred, either FAS or one of the Subcontractors worked on the Property.  See Incident Report, dated July 14, 2010, Exh. 12 to Furst Decl.; FAS Service History, Exh. B to Pennington Decl., D.E. 124.  In addition, FAS submitted invoices to AHMS on behalf of Accura-Tec for "ongoing maid services" that were completed during that time, as well as work orders for services to be completed by their Subcontractors.  See Invoices, Exh. G to Harris Cert., D.E. 106; Work Orders for Accura-Tec and Dirty Demolition, Exh. F to Harris Cert., D.E. 106.  The record thus demonstrates that FAS had the opportunity and the ability to exercise care, which weighs in favor of imposing a duty of care.

FAS contends that even if the Subcontractors negligently maintained the Property, FAS cannot be held liable for the negligent acts of its independent contractor.  While FAS is partly correct, an employer's protection from liability is not absolute.  Instead, "the reservation of control over the equipment to be used, the manner or method of doing the work, or direction of the employees of the independent contractor may permit vicarious liability."  Mavrikidis v. Petullo, 153 N.J. 117, 135 (1998); see also Majestic Realty Assoc., Inc. v. Toti Contracting Co., 30 N.J. 425, 431 (1959) (identifying situations where a landowner retains control, hires an incompetent contractor and contracts for activities constituting nuisance per se as exceptions to the general rule against employer liability for the tort of independent contractors).

Here, the evidence raises a genuine issue of material fact concerning the degree of control that FAS exerted over the Subcontractors.  For instance, FAS's Vendor Qualification Packets and Work Orders provide instructions concerning: (1) the specific work to be performed; (2) how that work was to be performed; and (3) the procedure to be followed for performing that work.  See Vendor Qualification Packet at 14-15, Exh. E to Harris Cert., D.E. 106; see also Work Orders for Accura-Tec and Dirty Demolition, Exh. F. to Harris Cert, D.E. 106.  Moreover, the Vendor Qualification Packets and the Work Orders required the Subcontractors to provide before and after pictures to FAS after performing services such as debris removal and janitorial work.  See id.  The instructions contained in the Vendor Qualification Packets and Work Orders, as well as the requirement that subcontractors submit photographs of the work for FAS to review, suggest that FAS may have maintained at least some degree of control over the manner in which the Subcontractors performed the work.  Therefore, despite FAS's arguments to the contrary, these documents raise a genuine issue concerning whether FAS controlled the manner and means

by which the Subcontractors performed services on its behalf.  Given these facts, the Court concludes that summary judgment is inappropriate.

Finally, the Court notes that other than challenging whether it owed Plaintiffs' a duty, FAS does not advance any specific arguments concerning whether Plaintiffs can establish the remaining elements of the negligence claim.  Accordingly, the Undersigned respectfully recommends that the District Court deny FAS's motion for summary judgment.[5]

### B.  The Wells Fargo Defendants' Motion for Summary Judgment

#### a.  Arguments

The Wells Fargo Defendants also move for summary judgment.  See Wells Fargo Defs. Mot. for Sum. Judgment, D.E. 107-8.  First, the Wells Fargo Defendants argue that they did not owe a duty of care to Plaintiffs.  See id. at 11-15.  In challenging the duty element, the Wells Fargo Defendants assert that they had no relationship with Plaintiffs, and made no representations as to the condition of the Property.  See id. at 12. They further contend that the condition alleged to have caused the slip and fall accident – the broken glass in the bathroom –

---

[5] The Court notes that in its opposition, the Wells Fargo Defendants argue that a genuine issue of fact exists regarding:  (1) whether FAS agreed to indemnify the Wells Fargo Defendants for any negligent acts or omissions committed by FAS or its Subcontractors, and (2) whether FAS owed the Wells Fargo Defendants a contractual duty to maintain the Property in a workmanlike condition.  See Wells Fargo Defs. Br. at 11-12, D.E. 124.  FAS, however, asserts that it satisfied its contractual duty to the Wells Fargo Defendants, and that the Wells Fargo Defendants failed to set forth sufficient evidence to prove that FAS failed to perform its obligations under the FAS Agreement.  See FAS Reply Br. at 6-7, D.E. 133.  FAS further contends that the Wells Fargo Defendants misinterpret the indemnity provision of the FAS Agreement, and that the indemnity provision does not require FAS to indemnify the Wells Fargo Defendants for the negligence of FAS's contractors.  See id. at 5.

As noted above, the Court has already found that FAS had a duty to maintain the Property under the contract, and therefore that FAS had a duty to exercise reasonable care to prevent against reasonably foreseeable injury to persons invited onto the Property.  See Saltiel, 170 N.J. at 311-12 (2002).  Accordingly, the Wells Fargo Defendants' arguments do not alter the Court's ruling.

was a transient condition of which the Wells Fargo Defendants had no knowledge.  See id.  The

Wells Fargo Defendants also contend that because the Property was vacant, and they did not

inhabit it, it was difficult to eliminate transient conditions.  Id. at 14-15.  The Wells Fargo

Defendants argue that finding they owed a duty would create harmful precedent requiring

owners of foreclosed properties to perform daily inspections.  See id. at 15.

Second, the Wells Fargo Defendants claim that they could not correct the alleged

condition on the Property because they did not know about it until two days before Plaintiff

Charlton's accident.  See id. at 14.  Further, they contend that even if this Court were to find that

the Wells Fargo Defendants owed a duty to Plaintiffs, the lack of notice of the alleged condition

renders Plaintiffs' claims unsustainable.  See id. at 16-19.  According to these Defendants, New

Jersey law imposes a duty to warn against only dangerous conditions of which a defendant knew

or should have known, and here the record is devoid of any evidence establishing knowledge

about the condition.  See id. at 18.

Third, the Wells Fargo Defendants assert that even if they breached a duty of care, that

breach did not cause Plaintiffs' injuries.  See id. at 20-23.  Essentially, the Wells Fargo

Defendants argue that the Century 21 Defendants' failure to inspect and correct the alleged

dangerous condition constituted a superseding intervening cause to Plaintiffs' injuries, which

absolves the Wells Fargo Defendants of any liability.  See id. at 22-23.

In opposition to the motion, Plaintiffs argue that summary judgment is inappropriate

because the Wells Fargo Defendants owed a non-delegable duty to Plaintiffs to ensure the

Property was safe.  Plaintiffs contend that the Wells Fargo Defendants misinterpret the New

Jersey Supreme Court's decision in Hopkins v. Fox & Lazo Realtors, 132 N.J. 426 (1993).  See

Pl. Opp. Br. at 8, D.E. 127.  According to Plaintiffs, the New Jersey Supreme Court in Hopkins intended to expand the reach of tort law to non-traditional tortfeasors, not limit it.  See id.

Plaintiffs also contend that even if the Hopkins test applied to this case, a careful analysis of the facts militates in favor of imposing a duty on these Defendants.  See id. at 9-11.  Plaintiffs argue that the Wells Fargo Defendants enjoyed the economic benefits of marketing valuable property, and Plaintiffs should be able to expect a safe premises when viewing the Property for potential purchase.  See id. at 10.  Moreover, Plaintiffs assert that it is foreseeable that a dangerous condition may exist on a foreclosed property, and that the Wells Fargo Defendants could have remedied any such condition by following the customary industry standards, and by paying a company to properly maintain the Property.  See id. at 11.  Finally, Plaintiffs contend that public policy and fairness considerations require the imposition of a duty on the owners of foreclosed properties.  See id. at 11-12.  Plaintiffs aver that given the foreclosure crisis in this country, a ruling that these Defendants owed no duty would incentivize banks to have little involvement in the management of foreclosed properties in order to avoid liability.  See id.

    **b.  Analysis**

        **i.  Duty**

Commercial lenders that take possession of a residential property through a foreclosure assume the position of the owner.  Scott v. Hoboken Bank for Sav. in City of Hoboken, 126 N.J.L. 294, 297 (1941).  Generally, property owners have a non-delegable duty to reasonably inspect their property to protect business invitees against reasonably foreseeable injury due to any dangerous conditions on the property.  Hopkins, 132 N.J. at 441; Filipowicz, 350 N.J. Super. at 559.  Nevertheless, ownership status does not end the inquiry into whether a property owner has a duty.  Jimenez v. Maisch, 329 N.J. Super. 398, 402 (App. Div. 2000).  Instead, a court

determining whether a duty exists must conduct a fact-specific inquiry and balance several factors.  Hopkins, 132 N.J. at 439; Jimenez, 329 N.J. Super. at 402.

In Hopkins, the New Jersey Supreme Court found that the imposition of a duty of care on a property owner turns on whether such a duty "satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy."  132 N.J. at 439.  The court set forth several factors for consideration in such an inquiry including "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution."  Id.

Here, after weighing the Hopkins factors, the Court finds that the Wells Fargo Defendants owed a duty of care.  With regard to the first factor, the Wells Fargo Defendants argue that they had no relationship to Plaintiffs, but that argument is unavailing.  Plaintiffs were on the Property to view it for potential purchase.  See Dep. of Plaintiff Charlton, dated June 19, 2013, 1T21:1-9.  By marketing the Property for sale and inviting Plaintiffs onto the Property for that purpose, the Wells Fargo Defendants received an economic benefit.  As invitees, Plaintiff should reasonably have expected that the Property was in safe condition for viewing.

In considering the second factor—i.e., the nature of the attendant risk—the Court must consider the foreseeability that injury may occur due to a dangerous condition.  See Hopkins, 132 N.J. at 443.  The Wells Fargo Defendants contend that this factor weighs against imposition of a duty because the condition was a transient one of which they had no knowledge.  The Court disagrees.  Whether Defendants knew about the specific condition is relevant to the inquiry into whether a defendant breached a duty, not whether a defendant owed a duty of care.  See Bozza v. Vornado, Inc., 42 N.J. 355, 359 (1964) ("notice is merely one factor for determining whether the defendant has breached his duty of care.").  Moreover, regardless of whether the Defendants had

16

actual notice of the transient condition, it is foreseeable that that such a condition could exist on a foreclosed property.  The record establishes that South Orange police officers had discovered someone living in the Property without permission in July of 2010, and that individual had damaged the Property.  See Incident Report, dated July 14, 2010, Exh. 12 to Furst Decl, D.E. 108-16.[6]  That was only one month before the accident underlying this action.  Therefore, it was reasonably foreseeable that the property, in its vacant condition, was vulnerable to damage caused by either that individual or another person entering the premises without permission or notice, and that damage on the Property could have harmed an invitee visiting the Property.

The third factor – the opportunity and ability to exercise care – also weighs in favor of imposing a duty on the Wells Fargo Defendants.  Here again, the Wells Fargo Defendants emphasize that they had no notice of the alleged condition on the Property, and therefore, that they lacked the opportunity to cure the alleged dangerous condition.  The Court is certainly cognizant that the Wells Fargo Defendants cannot constantly visit all of its foreclosed properties.  But that does not provide an absolute bar to an owner's duty to exercise reasonable care.  As Plaintiffs' correctly note in their opposition, Defendants could have paid for maintenance services, which would provide them the opportunity and ability to exercise care.  See Pl. Opp. Br. at 11, D.E. 127.

Finally, public policy concerns support a finding that these Defendants owed a duty.  The Hopkins court emphasized that at the heart of the inquiry into whether a duty exists are notions of basic fairness and public policy.  See Hopkins, 132 N.J. at 439.  Here again, the Court is

---

[6] The Court notes that the parties did not submit the Incident Report for consideration with regard to the Wells Fargo Defendants' motion.  However, Plaintiffs' submitted that report as part of its motion for partial summary judgment.  See Pl. Mot. for Part. Sum. Judgment, D.E. 108.  Irrespective of the parties' failure to cite to the Report with regard to the Wells Fargo Defendants' motion, the Report is part of the record and is relevant to the disputed issues.  The Court will therefore consider it in making its decision.

mindful that the Wells Fargo Defendants did not maintain a consistent presence on the Property. Indeed, these Defendants contend that a finding that they owed a duty would result in a daily inspection requirement, which would create an unreasonable economic burden on owners of foreclosed properties. See Wells Fargo Defs. Mot. for Sum. Judgment at 15, D.E. 107-8. However, New Jersey courts have consistently recognized that homeowners are in the best position to learn of dangerous conditions on their property, and thus, to cure those conditions. See, e.g., Filipowicz, 350 N.J. Super. at 559. Certainly, even a vacant owner is in a superior position to ensure the property is adequately maintained than the invitee, who has neither the ability nor the duty to ensure there was no dangerous condition on the property.

For these reasons, the Court finds that the Wells Fargo Defendants owed a duty of care.

### ii.   Breach

The Wells Fargo Defendants argue that summary judgment should be granted because there are no facts to show they had notice of the alleged dangerous condition. See Wells Fargo Defs. Mot. for Sum. Judgment at 14, D.E. 107-8. Plaintiffs argue that whether these Defendants had notice is irrelevant because they had a non-delegable duty to use reasonable care. See Pl. Opp. Br. at 12, D.E. 127.

A landowner is generally not liable for injuries caused by defects or conditions for which he or she had no actual or constructive notice and no reasonable opportunity to discover it. Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003); Brown, 95 N.J. at 291. Accordingly, a plaintiff asserting a breach of a duty in a negligence action bears the burden of proving that a defendant had actual or constructive knowledge of the alleged dangerous condition that caused the accident. See Nisivoccia, 175 N.J. at 563. A defendant has constructive knowledge "if the condition had existed for such a length of time that [the owner]

should have known of its presence." Bozza, 42 N.J. at 359.  A plaintiff need not prove exactly how long the dangerous condition existed, as long as the facts establish that a defendant had constructive notice.  See McCracken v. Target Corp., No. 09-4816 (RBK/JS), 2011 WL 1466075, at *4 (D.N.J. Apr. 18, 2011).  In addition, if a plaintiff presents material facts tending to show that a defendant should have been aware of the dangerous condition, summary judgment should be denied.  See Monaco v. Hartz Mountain Corp., 178 N.J. 401, 419 (2004).

In this case, based on the record, and giving all reasonable inferences to Plaintiffs, the Court finds that summary judgment is inappropriate because a genuine dispute exists concerning whether the Wells Fargo Defendants had constructive notice, and therefore, should have known of the alleged dangerous condition on the Property.  The Wells Fargo Defendants contend that the record is devoid of any evidence establishing that they were on notice about the condition of the Property.  See Wells Fargo Defs. Mot. for Sum. Judgment at 17-18, D.E. 107-8.  To be sure, Plaintiffs do not advance any facts to dispute whether the Wells Fargo Defendants knew about the alleged condition of the Property.  Instead, Plaintiffs contend that whether these Defendants had such notice is irrelevant to the determination of this motion.  See Pl. Opp. Br. at 12, D.E. 127.  As set forth above, however, whether a plaintiff has presented material facts proving that a defendant should have known of a dangerous condition is a relevant determination in deciding whether a defendant has breached a duty.  See Monaco, 178 N.J. at 419; Bozza, 42 N.J. at 359.

Here, while Plaintiffs do not advance any arguments concerning whether the Wells Fargo Defendants had notice, the record submitted raises a genuine issue of material fact about whether Wells Fargo had adequate notice.  As discussed earlier, South Orange police officers discovered a third party living in the Property without permission in July of 2010, and that individual had damaged the Property.  See Incident Report, dated July 14, 2010, Exh. 12 to Furst Decl, D.E.

108-16.  The police report indicates that AHMS was the victim, and that a contractor, Tim

Miller, reported the incident to the South Orange Police.  See id.  Because Wells Fargo was the

owner of the property, the report, at a minimum, raises a genuine fact question about whether

AHMS or Wells Fargo received a copy of the police report notifying them of the damage, and

whether the contractor that discovered the condition notified these Defendants of the damage to

the Property.  Given these facts, the Wells Fargo Defendants are not entitled to judgment on the

issue of notice; the factfinder will have to determine whether the Wells Fargo Defendants lacked

reasonable notice.  Accordingly, the Undersigned respectfully recommends that the District

Court deny the Wells Fargo Defendants' motion for summary judgment.

### C.  Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs' motion for partial summary judgment asks the Court to conclude that as a

matter of law each Defendant in this matter owed a duty of care.  The Court has already

determined that FAS and the Wells Fargo Defendants owed a duty of care to Plaintiffs.

Accordingly, the Court will address Plaintiffs' motion with respect to the Century 21

Defendants.

#### a.  Arguments

Plaintiffs argue that under Hopkins, Defendant Miller, as a real estate broker, had a duty

to reasonably inspect the Property and warn any prospective buyers of any defects or dangerous

conditions.  See Pl. Mot. for Part. Sum. Judgment at 12, D.E. 108.  In addition, Plaintiffs contend

that Century 21 is subject to liability under the respondeat superior theory, and because FAS

retained Century 21 as the listing and selling agency for the Property.  See id. at 15.

The Century 21 Defendants contend that they had no such duty.  See Century 21 Def.

Opp. at 5-6, D.E. 118.  In sum, the Century 21 Defendants claim that as real estate agents, they

20

did not control the maintenance and repair of the Property, which weighs against the imposition of a duty.  See id. at 5.  In their cross-motion for summary judgment, discussed below, these Defendants argue that even if they owed a duty, they satisfied it by providing a general warning to Plaintiffs upon entering the Property.  See Century 21 Defs. Cross Mot. for Sum. Judgment at 3-6, D.E. 117.

**b.  Analysis**

A real estate broker showing a Property to an individual for potential purchase owes a duty of care to ensure an individual's safety.  Hopkins, 132 N.J. at 448.  That duty of care encompasses an obligation to reasonably inspect the property, to discover if any defects or dangerous conditions exist, and to warn the potential purchaser of those conditions before the purchaser views the home.  See id.  In Hopkins, the New Jersey Supreme Court considered whether a duty of care should be imposed on a real estate broker holding an open house.  132 N.J. at 431.  After carefully analyzing the traditional common law approach to landowner or occupier tort liability, the court held that a real estate broker owed a duty to prospective buyers and visitors to reasonably inspect a property to discover and warn them of any dangerous conditions located on the property.  Id. at 448.  In so holding, the court weighed the factors discussed above—specifically the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution–and determined those factors militated in favor of imposing a duty on a real estate broker.  Id. at 439.

Here, the Century 21 Defendants had a clear duty to warn Plaintiffs of any defects or dangerous conditions on the Property.  First, as recognized in Hopkins, a real estate broker

derives an economic benefit from opening a property up to potential purchasers.  Id. at 440-41.[7]

A customer, therefore, "may reasonably expect to be able to rely on and use the services

proffered by the broker in connection with an examination of the premises."  Id. at 440.  Here,

the Century 21 Defendants were engaged in exactly this form of business.  Defendant Miller, an

employee of Century 21, showed Plaintiffs the Property for potential purchase.  Thus, Plaintiffs

should have been able to rely on these Defendants to ensure that the Property was reasonably

safe, or that if it was not, that the Century 21 Defendants would warn Plaintiffs of any dangerous

conditions.

       With regard to the nature of the risk, here, the risk of injury was entirely foreseeable.

First, Defendant Miller knew the Property was a foreclosed home.  Indeed, Defendant Miller

testified that he warned Plaintiffs to be careful during that second visit to the Property

specifically because the Property was a foreclosed home and could be in disarray:

> Q:    Okay.  Okay.  Going back to the second visit again, tell me
> what happened after Mr. Francione and Ms. Charlton
> arrived.
>
> A:    We looked at the house again, went through the whole
> house, and when we were walking through the house
> usually in the beginning I explain to people – people that
> the –
>
> Q:    I'm not asking you usually.  I'm asking you what happened
> on this occasion.

---

[7] The Court notes that the Hopkins court analyzed a real estate broker's duty in the
context of the broker holding an open house.  Later, the New Jersey Superior Court, Appellate
Division applied that holding to an individual showing to a prospective buyer.  See Byer v.
Prudential Fox & Roach, 2008 WL 4057801, at *10 (N.J. Super. Ct. App. Div. Aug. 28, 2008)
(recognizing that while the holding in Hopkins applied to a broker holding an open house for the
general public, the principles could properly be applied to a one-on-one setting).  While the Byer
decision is not binding precedent, the court's decision to apply the Hopkins test to one-on-one
viewings is persuasive.

> A:   On this occasion I explained to be – just as we walked through I said, "Be careful, this is a foreclosure property. Things could be laying around the floor, whatever, just be careful." That's all.

Dep. of Glenn Miller, July 11, 2013, 2T64:14-19.  More importantly, Defendant Miller knew that there was a dangerous condition on the Property because he discovered a broken light fixture during a prior showing of the Property and notified others at Century 21:

> Q:   On that day you toured the whole house on the first occasion with Mr. Francione and Ms. Charlton?
>
> A:   Yes.
>
> Q:   And you said that you saw a broken light fixture.  Where was that?
>
> A:   One of the bathrooms on probably the second or third floor. I couldn't tell you – this house was very large.  It had a lot of bathrooms.  It was approximately over 6,000 square feet of living space, so it was a big house, but it was probably, if I had to guess, it would be maybe the third floor bathroom, hall bath.
>
> Q:   And did you tell anybody about that broken fixture?
>
> A:   When I went back to the office I believe I told either Paul or Wayne.  I'm not sure.
>
> Q:   And what was broken about it?
>
> A:   I'm sorry.  We're talking about the fixture in the bathroom.
>
> Q:   Yes.  It didn't illuminate when it was turned on?  Is that why you said it was broken?
>
> A:   No.  There was – you know, you could see the fixture was broken.  There were pieces on the floor.

Dep. of Glenn Miller, July 11, 2013, 2T51:11-21; 2T53:21-2T54:20.  With this knowledge, Defendant Miller should have been able to reasonably foresee that someone visiting the Property

could suffer an injury due to the broken glass on the bathroom floor.  Thus, the nature of the risk factor weighs in favor of imposing a duty of care.

Furthermore, these Defendants had an opportunity and ability to exercise care.  As discussed above, the record demonstrates that Defendant Miller knew of the risk prior to the incident and informed others at Century 21.  See Dep. of Glenn Miller, July 11, 2013, 2T51:11-21; 2T53:21-2T54:20.  Having had such knowledge, these Defendants had the opportunity to minimize that risk.  Equally important, these Defendants had the ability to do so.  Defendants could have done a number of things to mitigate or cure the risks, such as ensuring the glass was removed, closing off the bathroom, posting warning signs, or specifically warning Plaintiffs that there was broken glass on the bathroom floor.  Thus, this factor also weighs in favor of imposing a duty on the Century 21 Defendants.

Finally, with regard to the public policy and fairness considerations, this factor supports the imposition of a duty on these Defendants.  As the Hopkins court acknowledged, "the public interest is served by recognizing a duty of care on the part of brokers."  132 N.J. at 448.  That is certainly so where, as here, the broker was in a far superior position than the invitee to know of, and remedy, the hazard.

For these reasons, the Court finds that the Century 21 Defendants owed a duty to exercise care.  Therefore, the Court respectfully recommends that the District Court grant Plaintiffs' motion for partial summary judgment on the limited issue of the Defendants' duty to Plaintiffs.

### D.  The Century 21 Defendants Cross-Motion for Summary Judgment

Having decided that the Century 21 Defendants owed a duty of care, the Court will now address the cross motion for summary judgment.

### a. Arguments

After Plaintiffs filed their motion for partial summary judgment, the Century 21 Defendants filed a cross-motion for summary judgment.  See Century 21 Defs. Cross-Mot. for Sum. Judgment, D.E. 117.  In their cross-motion, these Defendants essentially argue that Plaintiffs cannot establish negligence because:  (1) the Century 21 Defendants satisfied their duty to Plaintiffs; and (2) there are no genuine disputes as to any material facts concerning the remaining elements for negligence.  See id. at 3, 9.

Both Plaintiffs and the Wells Fargo Defendants oppose the cross motion.  See Wells Fargo Defs. Opp. to Cross-Mot., D.E. 122; Pl. Opp. to Cross-Mot., D.E. 125.  The Wells Fargo Defendants argue that the Century 21 Defendants breached the duty of care owed to Plaintiffs, and therefore, that summary judgment is inappropriate.  See Wells Fargo Defs. Opp. to Cross-Mot. at 6, 9.  The Wells Fargo Defendants further contend that the Century 21 Defendants are negligent as a matter of law, and that their negligence is a superseding cause that serves to absolve the Wells Fargo Defendants of any liability to Plaintiffs.  See id. at 10-11.

In opposition, Plaintiffs first contend that Defendants' cross-motion for summary judgment was filed out of time, and therefore should not be considered.[8]  See Pl. Opp. to Cross-Mot. at 4-5, D.E. 125.  Plaintiffs contend that Defendants inappropriately rely on the New Jersey Court Rules, which do not apply to these proceedings.  See id.  Instead, the Federal Rules of Civil Procure and the Local Civil Rules apply, and Defendants cross-motion is prohibited as it does not relate to the subject matter of Plaintiffs' original motion.  See id.  As such, Defendants

---

[8] Plaintiffs correctly note that the Century 21 Defendants' summary judgment cross-motion did not follow procedural requirements under Fed. R. Civ. P. 7(b), 56, and L. Civ. R. 7.1(h).  Notwithstanding Plaintiffs' objections, the Court will consider the merits of Defendants cross-motion.

should have filed an appropriate motion for summary judgment, which would have been due on or before July 11, 2014, per the Court's Order.  See id.

Second, Plaintiffs assert Defendants' cross-motion fails to comply with Fed. R. Civ. P. 56, and therefore should be denied.  In particular, Plaintiffs' argue that the Defendants' failed to provide citations to the record for the following material facts:  (1) contradictions between the deposition testimony of Defendant Glenn Miller and his answers to interrogatories; (2) contradictions of fact made within Defendant Glenn Miller's own deposition testimony; (3) facts disputing the Century 21 Defendants' contentions set forth in Plaintiffs' discovery responses; and (4) the expert report demonstrating how Defendants breached their duty of care.  See id. at 5.

Third, Plaintiffs argue that even overlooking the procedural deficiencies, the Court should deny the cross-motion because the Century 21 Defendants relied on contested facts to argue that Century 21 satisfied the duty of care owed to Plaintiffs.  See id. at 6, 8.

**b.  Analysis**

After a careful review of the record, the Court finds that a genuine dispute of fact exists concerning whether the Century 21 Defendants breached their duty of care to Plaintiffs. Defendants contend that they acted reasonably and thus satisfied their duty by initially inspecting the Property, and thereafter by warning Plaintiffs to be careful during the viewing of the Property.  See Century 21 Defs. Cross-Mot. for Sum. Judgment at 3, D.E. 117.  In support of that argument, Defendants rely on the deposition testimony of Defendant Miller.  See id.  Indeed, that testimony, along with the other materials provided, raise questions of fact concerning whether Defendant Miller warned Plaintiffs, and the substance of any such warning.

As previously discussed, Defendant Miller testified that he walked through and inspected the Property on both occasions that Plaintiffs visited.  See Dep. of Glenn Miller, July 11, 2013,

26

2T49:8-12; 2T50:13-25; 2T51:11-2T52:9; 2T61:16-23.  His answers to Plaintiffs'

interrogatories, however, suggest that he did not walk through the property.  See Decl. of Joshua

M. Lurie ("Lurie Decl."), Exh. 2, Defendant Glenn Miller Ans. to Pl. Interrog. No. 16, D.E. 125-

3.  Moreover, Defendant Miller's testimony and answers to Plaintiffs' interrogatories reflect that

he warned Plaintiffs to be careful as they viewed the Property during the second visit.  See Dep.

of Glenn Miller, July 11, 2013, 2T64:14-20; Lurie Decl., Exh. 2, Defendant Glenn Miller Ans. to

Pl. Interrog. No. 2, D.E. 125-3.  Plaintiffs, however, contest that Defendant Miller provided any

such warning.  Specifically, Plaintiff Charlton testified as follows:

> Q:    By the way, did anybody give you any warnings before
> going into the home about, watch where you're going?
>
> A:    No.  I have no memory of that at all.
>
> Q:    As you're walking through this property with everybody,
> did anybody say, hey, careful, the lights aren't on, watch
> where you're stepping?
>
> A:     I was told that the lights weren't on.  That was apparent.  I
> don't remember – no, I don't remember that at all.

Dep. of Plaintiff Charlton, dated June 19, 2013, 1T121:4-15.  In addition, Plaintiff Francione's

testimony does not resolve whether Defendant Miller provided any warning:

> Q:    Okay.  So when Glenn and your group went down to the
> second floor, did he, for example, specifically with this
> bathroom, did he point out to you here's the bathroom, you
> can see they're doing some work back there or something –
> words to that effect, pointing out to you and the group, you
> know, the pile of debris that's clearly depicted in these
> photographs?
>
> A:    Are you asking me did he point out the debris?
>
> Q:    Yeah, did he point out – words to the effect, yeah take a
> look, they're doing work back there, referring to, you
> know, the debris that's shown in these photographs?

> A:    No.  I do not recall what he said, if he said anything about it.  I can tell you though that he told us that they weren't doing any work on the house because the house was basically – they had done some renovations, but that had all stopped and they were selling the house and that was it.

Dep. of Plaintiff Francione, dated June 19, 2013, 3T18:18-3T19:13.[9]  Given these disputed facts, summary judgment is inappropriate here.  The facts presented demonstrate that there is a genuine issue of material fact regarding what, if any, warning Defendant Miller issued to Plaintiffs, and therefore whether the Century 21 Defendants discharged their duty of care to Plaintiffs.  Accordingly, the Undersigned respectfully recommends that the District Court deny the Century 21 Defendants' cross-motion for summary judgment.

## VI.   CONCLUSION

For the reasons set forth above, the Undersigned respectfully recommends that the District Court grant Plaintiffs' motion for partial summary judgment [D.E. 108] and deny Defendants' motions [D.E. 106, 107] and cross-motion [D.E. 117] for summary judgment.

The parties are reminded that pursuant to 28 U.S.C. § 636 and L. Civ. R. 71.1(c)(2), they have fourteen days to file and serve any objection to this Report and Recommendation.

*s/ Michael A. Hammer* _____
**UNITED STATES MAGISTRATE JUDGE**

Dated:  January 28, 2015

---

[9] "3T" refers to Plaintiff Francione's deposition transcript, dated, June 19, 2013.