THIS FORM IS TO BE RETYPED IN FULL, INCLUDING INSTRUCTIONS, AND ALL MATERIAL INSERTED IN PROPER SEQUENCE AND NOT BY MEANS OF ATTACHMENTS UNLESS SPECIFICALLY PROVIDED FOR.  FOOTNOTES DO NOT HAVE TO BE RETYPED BUT THEY MUST BE FOLLOWED

PLEASE NUMBER ALL PAGES

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANNA CHARLTON and GARY FRANCIONE | HON. JOHN MICHAEL VAZQUEZ, U.S.D.J. |
| Plaintiffs, | Civ. Action No.   2:11-cv-06572-JMV-JBC |
| v. | |
| WELLS FARGO BANK, N.A.; FIELD ASSET SERVICES; AMERICAN HOME MORTGAGE SERVICING, INC.; CENTURY 21 GEMINI, LLC; GLENN MILLER; DIRTY DEMOLITION SERVICES, LLC; ACCURA-TEC, INC.; CORPORATIONS A-Z (Corporations who were involved in the cleaning, maintaining, management, or repairing of 379 Montrose Street, South Orange, New Jersey);  REALTORS A-J (Real Estate Agents who were the seller's agent and thus responsible for the sale of 379 Montrose Street, South Orange, New Jersey); REAL ESTATE CORPORATIONS A-J (Real Estate Companies who were the selling corporation and listed 379 Montrose Street, South Orange, New Jersey) CORPORATIONS 1-10 (Corporations which own, operate, or have a controlling interest in Field Asset Service); CORPORATIONS 11-20 (Corporations which own, operate, or have a controlling interest in Power REO Management Services, Inc.); JOHN DOES 1-10 (Individuals who performed the cleaning services at 379 Montrose Street, South Orange, New Jersey); and JOHN DOES | **FINAL PRETRIAL ORDER** |

11-20 (Individuals who manage or otherwise supervise the cleaning services at 379 Montrose Street, South Orange, New Jersey),

Defendant.

This matter having come before the Court for a pretrial conference; _____

having appeared for plaintiff(s); _____ having appeared for defendant(s); the Final

Pretrial Order is hereby entered:

1. **Jurisdiction** (set forth specifically):  The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, Diversity Jurisdiction, as the amount in controversy exceeds $75,000.00 and there is complete diversity as the parties are citizens of different States

2. **Trial Date**:  As to be set by the Hon. John Michael Vazquez, U.S.D.C.

3. **Estimated Length of Trial**:  4 days for liability and 5 days for damages

4. **Trial Counsel** (include contact numbers and email addresses).

   A. Plaintiff:

      Henry F. Furst, Esq. and Joshua Lurie, Esq.
      Furst & Lurie, LLP
      66 Park Street
      Montclair, New Jersey 07042

   B. Defendant:

      Defendant Field Asset Services:
      Keith Harris, Esq.
      Braff, Harris & Sukoneck
      570 W. Mt. Pleasant Ave., Suite 200
      P.O. Box 657
      Livingston, New Jersey 07039

      Defendants Glenn Miller and Century21 Gemini, LLC:
      Mario C. Colitti, Esq.
      Viscomi & Lyons
      Mount Kemble Corporate Center

2

360 Mt. Kemble Ave., Suite B1000
Morristown, New Jersey 07960

5.  **Pending/Contemplated Motions** (set forth all pending or contemplated motions): [1]

Pretrial motions shall be returnable on September 6, 2016.  The parties shall move the Court by or before July 15, 2016.  All responding submissions shall be served no later than August 15, 2016 and any replies no later than August 29, 2016.

Plaintiffs will move, *in limine*, to bar the testimony and video(s) of defense witness Anthony Lemma.  First, Defendants amended their Rule 26 disclosure after the conclusion of fact discovery to add this additional witness and his video-taped surveillance.  The surveillance was undertaken after the court ordered conclusion of fact discovery.  Second, a second day of surveillance video was not disclosed, allegedly because of weather conditions.  However, the weather conditions did not prevent the surveillance.  We were unable to depose the videographer due to the conclusion of discovery and the defense objects to allowing the Plaintiff to name rebuttal witnesses -- because they were identified out of time.

Plaintiffs will move, *in limine*, to bar the reports and/or testimony of any defense expert whose report was not filed within the time required under the applicable court orders as to expert discovery and without permission of the Court for late submission.

Defendant, Field Asset Services, LLC will move, *in limine,* to bar the testimony and report of Michael G. Cohan as net opinion. This defendant further reserves the right to file any other motions *in limine* depending on the outcome of the pending summary judgment motions. Plaintiff objects to this Defendant not identifying all other in limine motions at this time and they are therefore waived.

**Defendant Glenn Miller/Century 21/Gemini will move *in limine* for a settling defendant jury instruction as to co-defendant Wells Fargo Bank, in accordance with The New Jersey Supreme Court's holding in Theobold v. Angelos, 40 N.J. 295, 191 A.2d 465 (1963).**

6.  **Stipulation of Facts** (set forth in numbered paragraphs all uncontested facts to which the parties agree):

A.  Plaintiffs were on the premises commonly known as 379 Montrose Avenue, South Orange, New Jersey (the "Property") on August 17, 2010.

---

[1] Judge Vazquez anticipates that the pending and contemplated motions will be limited to in limine motions.  Judge Vazquez's judicial preference is to have all dispositive and Daubert motions decided prior to the final pretrial conference unless otherwise directed by the Court.  All discovery motions should be resolved well in advance of the final pretrial conference.

B. The Property was foreclosed upon and owned by Wells Fargo Bank, NA ("WF") on August 17, 2010.

C. WF, pursuant to a pooling agreement, designated American Home Mortgage Servicing, Inc. ("AHMS") to service the property.

D. AHMS retained the services of Field Asset Services, LLC ("FAS") to provide various property maintenance and preservation services at the Property.

E. FAS retained various entities, including defendants Dirty Demolition Services, LLC (service accomplished and default entered) and Accurtech, LLC (service not accomplished, dismissal without prejudice entered).

F. The Property was listed for sale by Century 21/Gemini, LLC ("Century 21").

G. Glenn Miller worked for Century 21 as **a selling agent** on August 17, 2010.

H. On August 11, 2010 Defendant Accuratech was requested by FAS to provide maid services at the Property.  These services were provided on October 2, 2010

I. On August 11, 2010 Defendant Dirty Demolition was requested by FAS to provide boarding up services at the Property and was at the Property on August 17, 2010.

J. Dirty Demolition was requested by FAS to provide board up services on .

K. On August 15, 2010, Plaintiffs and Miller went to the Property to view it.  They were unable to have a full viewing due to the time of day and the lack of electricity in the Property.

L. On August 17, 2010, Plaintiffs and Miller returned to the Property to have another view.

M. On August 17, 2010, Miller permitted Anna Charlton to enter the property alone to view the property.

N. On August 17, 2010, Anna Charlton alleges that she fell in an upstairs bathroom causing injuries.

7. **Judicial Notice** (include a short explanation and legal citation for Court's authority to take judicial notice, including whether the request is made pursuant to F.R.E. 201(b)(1) or (b)(2).  Objections shall also include a short explanation and legal citation in support of the opposition).[2]

A. Plaintiff requests that the Court take judicial notice of the following facts:

On November 7, 2013 in Bala Cynwyd, PA, it was not raining heavily and the weather conditions were mostly cloudy with approximately $1/10^{th}$ of an inch of rain throughout the entire day.

B. Defendant objects to the taking of judicial notice for the following reasons:

Plaintiff has failed to provide climatological data or expert reports/testimony pursuant to Fed.R.Evid. 703.

---

[2] If the parties' position(s) cannot be set forth succinctly, then issues concerning judicial notice should be addressed in a motion in limine.

C. Defendant requests that the Court take judicial notice of the following facts:

FAS requests that the Court take judicial notice of the fact that a property owner has a non-delegable duty to take measures to ensure that the property is maintained and kept in reasonably safe condition so as to prevent injury to third parties. It is requested that the Court take judicial notice that FAS did not own this property on the date of loss.

D. Plaintiff objects to the taking of judicial notice for the following reasons:

The above items are not appropriate for judicial notice except those regarding ownership of the property on August 17, 2010

8. **Plaintiff's Contested Facts** (if there is more than one Plaintiff, state separately for each Plaintiff. Failure to set forth any matter shall be deemed a waiver thereof).

A. Plaintiff intends to prove the following contested facts with regard to liability:

1. Plaintiffs were business invitees at the Property on August 17, 2010.
2. Anna Charlton was caused to fall and injured herself by slipping on broken glass on the floor in a bathroom on an upper floor of the Property resulting in severe and permanent injuries.
3. The broken glass was so similar in color and appearance to the floor that it was not readily observable to the ordinary and prudent person viewing a residential property for purchase.
4. Defendants had a duty to ensure that the property was inspected and made safe for all business invitees, including Plaintiffs.
5. Glenn Miller was aware of the broken glass on the floor of the bathroom where Anna Charlton fell before she fell.
6. The broken glass was a dangerous condition.
7. Glenn Miller did not advise Plaintiffs of the presence of the broken glass.
8. Glenn Miller did not clean up the broken glass.
9. Glenn Miller knew it was his responsibility and duty to make sure the Property was safe for prospective purchasers viewing it.
10. Glenn Miller did not inspect the Property prior to any viewing by Plaintiffs.
11. Century 21 did not, at any time, inspect the Property prior to any viewing by Plaintiffs to ensure it was safe for business invitees by warning or removing any dangerous conditions.
12. WF did not, at any time, inspect the Property prior to any viewing by Plaintiffs to ensure it was safe for business invitees by warning or removing any dangerous conditions and had no policies in place for such action.
13. AHMS was a party to the pooling agreement with WF which required them, pursuant to Section 3.23, to "manage and maintain the property."

14. AHMS did not, at any time, inspect the Property to ensure it was safe for business invitees by warning or removing any dangerous conditions.
15. AHMS retained FAS pursuant to a Master Service Agreement which required FAS to clean, repair and maintain the Property.
16. FAS did not, at any time, inspect the Property prior to any viewing by Plaintiffs to ensure it was safe for business invitees by warning or removing any dangerous conditions.
17. Anna Charlton and Gary Francione expected that the property would be maintained in a safe condition for prospective purchasers viewing it and any dangerous conditions would be removed, had access blocked, or warnings provided.
18. FAS was retained for the purpose of maintaining the Property.
19. Neighbors witnessed people going in and out of the Property at all times of the night who were not authorized by the owner, WF, to be there.
20. FAS had no policies in place to ensure that their vendors were actually performing the services regarding this Property in a timely fashion.
21. Approximately one month before Anna Charlton's accident, FAS was provided with notice that the Property was broken into and that "squatters" lived in the property.
22. FAS ordered the Property to be "boarded up" on August 17, 2010.
23. Dirty Demolition boarded up the Property on August 17, 2010 but did not remove the dangerous condition in the upstairs bathroom.
24. FAS's policies for board ups do not require the cleaning of the interior of the properties, even if there are dangerous conditions which necessitated the board up.
25. On August 10, 2010 FAS ordered Accuratech to clean the interior of the Property.
26. Accuratech did not clean the Property until after August 17, 2010.
27. FAS did not ensure that the interior of the Property was cleaned after notice of squatters in the Property and after the board up.
28. AHMS did not ensure that the interior of the Property was cleaned after notice of squatters in the Property and after the board up.
29. WF did not ensure that the interior of the Property was cleaned after notice of squatters in the Property and after the board up.
30. Century 21 did not ensure that the interior of the Property was cleaned after notice of squatters in the Property and after the board up.
31. Glenn Miller did not ensure that the interior of the Property was cleaned after notice of squatters in the Property and after the board up.
32. All defendants knew that a prospective purchaser could view the Property at any time.
33. No defendant prohibited any Plaintiff from viewing the Property at any time.
34. No defendant ever warned any Plaintiff of any condition at the Property.
35. No defendant ever warned any Plaintiff of any dangerous condition at the Property.

B. Plaintiff intends to prove the following contested facts with regard to any affirmative defense:

C. Plaintiff intends to prove the following contested facts with regard to damages (include each item of damages, the amount of each item, and the factual basis for each item):

1. The injuries which Anna Charlton suffered were proximately caused by the accident which occurred on August 17, 2010.
2. The accident on August 17, 2010 was proximately caused by the breach of duty by each defendant.
3. The defendants' breach of duty proximately caused the following injuries to Anna Charlton:
   a. Dental injuries as set forth more fully in the report of Dr. Greenwald and which are continuing and severe:
      i. Bridge damaged;
      ii. Loss of maxillary central incisors (the top front teeth);
      iii. Necessity and earlier/original plan to remove maxillary left posterior teeth including second maxillary left bicuspid (5th tooth on top left) and maxillary left first and second molar (6th and 7th on left) changed to removal of all natural teeth from and including right lateral cuspid through entire left maxillary arch;
      iv. Insertion of implants;
      v. Bone grafting for a sinus lift;
      vi. Removal of both lateral cuspids due to propensity for anaerobic infection which could not be addressed by antibiotics and causing damage to bone grafts;
      vii. Insertion of bridge consisting of nine teeth in a 3-D printed zirconium single unit to stabilize maxillary arch
      viii. Need for future implants as current ones have limited lifespan;
      ix. Expected monetary damages of $122,000.00 including current treatment.
   b. Orthopedic injuries as set forth more fully in the report of Dr. Rizio:
      i. Permanent soreness and tenderness over the lateral condyle (side of the end of the bone at the left elbow);
      ii. Partial tear of right rotator cuff requiring surgery (not performed to date) with continuing physical therapy;
      iii. Reduced range of motion;
      iv. Exacerbation of pre-existing degenerative cervical spine bulging and herniation.
   c. Podiatric injuries as set forth more fully in the report of Dr. Bernstein:
      i. Uneven gait as a result of injuries which typically take approximately a year to manifest after injury;

        ii. Diagnosis of Right Plantar Fasciitis (inflammation of Plantar fascia which is connective tissue which supports the arch) with calcaneal spur (bone spur on heel bone);

        iii. Two years of treatment (ending May, 2014) with night splint, foot brace and physical therapy;

        iv. Adjusted weight on left side due to pain on right side from injuries suffered on August 17, 2010 which caused issues with left foot; and

        v. Moderate bunion deformity became more painful and required bunionectomy with metatarsal osteotomy and fixation on March 18, 2013 (cutting the metatarsal bone of the big toe and realigning the bone to correct the deformity. Recovery takes one to two months, depending on the type of deformity being corrected and the type of surgery used to correct it).

        vi. Surgery caused a development of neuromas between toes of left foot requiring a year of treatment to date and the requirement of removal of nerves for removal of all discomfort.

    d. Neurological injuries as set forth more fully in the report of Dr. Lubeck:

        i. Cervical spinal cord injury secondary to cervical hyperextension with static neurologic deficits.

    e. Physical injuries set forth more fully in the report of Dr. Lerman:

        i. Central cord syndrome indicated by upper and lower extremity paresthesias with evidence of hyperreflexia; and

        ii. Cervical radiculopathy causing a right shoulder impingement syndrome.

9. **Defendant's Contested Facts** (if there is more than one Defendant, state separately for each Defendant. Failure to set forth any matter shall be deemed a waiver thereof).

A. Defendant intends to prove the following contested facts with regard to liability:

(FAS)

(1) FAS did not own the subject property.

(2) The only responsibilities FAS had with respect to the property were pursuant to contract.

(3) FAS was only permitted to perform services of any type or kind at the property with authority from the property owner.

(4) FAS did not cause and/or contribute to any alleged unsafe condition the plaintiff encountered nor did it have notice of it.

(5) There is no evidence as to who caused   or created the condition the plaintiff allegedly encountered, when it was created, for how long it had existed or that FAS had notice of it.

(6) FAS performed all services which it was contractually obligated to perform and did so in a reasonable and appropriate manner.

(7) FAS owed no legal duty to the plaintiffs.

(8) The property at the time of this incident was not owned or under the control of FAS nor was it present on site.

(9) The plaintiff was on notice that the property was vacant and in need of rehabilitation and repair.

(10)   The plaintiff's accident took place during her second visit to the site.

(11)   Proper observation and due care would have allowed the plaintiff to observe any allegedly unsafe condition and avoid it.

(12)   The plaintiff's own negligence was greater than 50% and therefore she is barred from recovery.

(13)   If there is any liability other than the plaintiff's which caused this incident it was the responsibility of parties other than FAS.

(14)   Independent contractors retained by FAS who provided services at this location are not parties to the action.

(15)   FAS acted reasonably and prudently in the provision of its services at this location and in connection with its retaining third party contractors to work at the site.

(21st/Miller)

(1) Defendant Century 21 Gemini, LLC ("Century 21") was the listing agent hired by REO Management Service for a foreclosed property owned by co-defendant Wells Fargo situated at 379 Montrose Avenue, South Orange, New Jersey.

(2) August 17, 2010, Century 21's Glenn Miller was conducting a second "showing" of the property to plaintiff and her husband, Gary Francione, who had expressed an interest in purchasing the property.

(3) The plaintiffs had also brought with them to that second showing their personal builder and designer (names unknown). Plaintiff Charlton had re-entered the house alone to make some notes and drawings on a sketch pad. Mr. Miller, Mr. Francione and the plaintiffs' builder were standing outside of the home when they heard Ms. Charlton yell out. Mr. Francione and Mr. Miller went back into the house, and Mr. Francione found Ms. Charlton upstairs.

(4) Ms. Charlton reported that she fell, allegedly due to broken glass that was on the floor in a bathroom. No one witnessed her fall. Mr. Miller retrieved a frozen bottle of water from his car and gave it Ms. Charlton to ease the puffiness in her face. Glenn Miller asked plaintiff if she wanted him to contact paramedics for medical attention. Plaintiff and her husband declined.

(5) The Century 21 procedures for agents instruct them to arrive at a property before a scheduled showing and ensure that the property is safe.

(6) Mr. Miller found the property located at 379 Montrose to be in "broom clean condition."

(7) Pieces of a broken light fixture were on the floor in one of the bathrooms during Mr. Miller's inspection of the property which he reported, but he saw no potential danger or hazards.

(8) Because of the special circumstances surrounding the sale of a foreclosure property, and its questionable "as is" habitability as the property was being renovated at the time of plaintiff's second tour, Mr. Miller warned the plaintiffs to "be careful."

(9) The plaintiffs were aware this was a foreclosed property, "as is condition," and it had been under renovation prior to the property going into foreclosure;

(10)      The plaintiff were aware that there was construction debris existed throughout the house, and debris from "squatters" who were reported to have be in the house for a few weeks prior to being removed by local police.

(11)      Plaintiffs were aware of the conditions of the property when they inspected the house on August 15, 2010.

(12)      Plaintiffs returned for the second showing on August 17, 2010, after expressing an interest in purchasing the property.

(13)      Defendant Glenn Miller reported plaintiff's alleged accident to Paul Covello of Century 21, who was the listing agent.

(14)      Century 21 did not own the subject property.

(15)      Century 21 and Glenn Miller were only permitted to perform realty services with authorization from the property owner.

(16)      There is no evidence as to who caused or created the condition of which plaintiff complains, or for how long the condition existed prior to plaintiff's alleged accident.

(17)      Plaintiff failed to exercise reasonable care for her own safety as she should have observed the allegedly dangerous condition prior to her alleged accident.

(18)      Independent contractors who provided cleaning and/or renovation services for the subject property are not parties to this action.

(19)      Century 21 and Glenn Miller acted reasonably and prudently in showing the property to plaintiffs.


B.   Defendant intends to prove the following contested facts with regard to any affirmative defense:


C.   Defendant intends to prove the following contested facts with regard to damages: (include the factual basis for each defense against Plaintiff's claims for damages).

(FAS)

(1) FAS denies directly or proximately causing any damages to the plaintiffs.

(2) The injuries alleged by the plaintiff were  not  directly or  proximately caused by the alleged incident.

(3) The injuries alleged by the plaintiff relate to preexisting conditions.

(4) The injuries alleged by the plaintiff relate to conditions of a chronic or degenerative nature unrelated to the incident.

(5) The plaintiff has failed to mitigate her damages.

(6) The plaintiff is seeking to recover damages unrelated to the alleged  incident.

(7) The plaintiffs suffered no monetary loss as a result of this incident.

(8) The plaintiff claims  a variety of physical  injuries. She  claims  dental injuries but has  a long  standing history dental problems, tooth  decay  and  other issues and  received extensive dental care prior to this incident for the same conditions alleged to  have  been  caused  as a result  of it. In addition, the plaintiff's dental records inexplicably omit narrative information concerning her dental care  received immediately prior to the subject incident.

(9) The  plaintiff  alleges  orthopedic and  neurological injuries relative to  her

neck, right shoulder, arms, legs and feet but those are largely problems related to degenerative changes and further alleges foot problem or bunion issues which would not be traumatically induced. The plaintiff has evidence of cervical and other orthopedic problems going back as far as 2004 and the damages she alleges as a result of this incident all relate to preexisting conditions or medical or dental issues of an unrelated or chronic nature. If the plaintiff suffered any injury as a result of this incident they were at worst orthopedic sprains and strains which would have resolved shortly thereafter. FAS denies directly or proximately causing harm of any type or kind to the plaintiffs.

(21st/Miller)

No additional


10. **Witnesses** (non-expert) (except for those called <u>solely</u> for impeachment purposes, only the witnesses set forth may testify at trial. Indicate whether the witness will be called as to liability, damages, or both, and include a short synopsis – no longer than three lines – as to the witness' anticipated testimony).

A. Plaintiff:

1. Anna Charlton will testify as to the events concerning her visits to the Property, her fall and the ensuing injuries along with the treatment received and the injuries caused by the fall. She will also testify as to her injuries suffered on August 17, 2010 and the treatment which followed as well as current complaints

2. Gary Francione will testify as to the events concerning his visits to the Property and his observations of Anna Charlton after he re-entered the Property. He will also testify to his observations and involvement in her treatment and care after she was injured. He will also testify as to his per quod damages. Gary Francione will testify as to Anna Charlton's injuries, treatment, and his per quod damages resulting from Anna Charlton's injuries.

3. Glenn Miller will testify as to his involvement in the showing of the Property to the Plaintiffs and the circumstances surrounding it. This includes his deposition testimony and interrogatory answers.

4. Aimee Caracena and Craig Rueter of AHMS, 1525 South Belt Line Road, Coppell, Texas 75019 will identify the contracts with WF and FAS regarding the Property and provide testimony regarding the procedures of WF and/or AHMS in regard to properties which they own/maintain/service and their knowledge regarding the condition of the Property;

5. Sarah Hunter of FAS- 101 West Louis Henna Boulevard #400, Austin, Texas 78728-1284 will identify the vendor packages and procedures for FAS, the work orders from FAS to their vendors regarding the Property and the knowledge FAS possessed regarding the condition of the Property;

6. Professor Ronald K. Chen, Acting Dean, Rutgers Law School, 123

Washington Street, Newark, New Jersey 07102 will testify as to their observation of Anna Charlton's injuries.

7. Professor Reed K. Weisbord, Vice-Dean, Rutgers Law School, 123 Washington Street, Newark New Jersey 07102 will testify as to their observation of Anna Charlton's injuries.

8. Marianne Moore, Administrative Assistant, Rutgers Law School, 123 Washington Street, Newark, New Jersey 07102 will testify as to their observation of Anna Charlton's injuries.

9. Dr. Valery Giroux, Centre de recherche en éthique de l'Université de Montreal, 2910, Boul. Edouard-Montpetit, Montréal, Québec, Canada H3T 1J7 will testify as to their observation of Anna Charlton's injuries.

10. Geoffrey Schwartz, Esq., Pepper, Hamilton, LLC, 3000 Two Logan Square, Eighteenth and Arch Streets, Philadelphia, Pennsylvania 19103-2799 will testify as to their observation of Anna Charlton's injuries.

11. Melissa Resnick, DMV, 329 South 25th Street, Philadelphia, Pennsylvania 19103 will testify as to their observation of Anna Charlton's injuries.

12. Robert Otto, MPT, 2010 West Chester Pike, Havertown, Pennsylvania 19083 will testify as to Anna Charlton's ambulation.

B. Defendant:

(21st/Miller)

Glenn Miller will testify about the circumstances of showing the subject property to plaintiffs on two occasions.

Paul Covello will testify that he was Century 21's listing agent for the subject property and its classification as "as is" property.

Maria Chiara Carta, M.D., ExamWorks, Inc., 4 Becker Farm Rd., Roseland, NJ 07068, who will testify in accordance with her April 7, 2014 narrative expert report and addenda.

a. Noubar A. Didizian, M.D., One Bala Plaza, Suite 621, Bala Cynwyd, PA 19004, who will testify in accordance with his November 14, 2013 narrative expert report.

Phillip R. Geron, D.M.D., Westfield Oral Surgery Associates, P.C., 320 Lenox Ave., Westfield, NJ 07090, who will testify in accordance with his November 18, 2013 narrative expert report.

Stephen M. Horowitz, M.D., Willow Ridge Executive Office Park, 750 Route 73 South, Suite 207, Marlton, NJ 08053, who will testify in accordance with his narrative expert report and addenda.

Anthony Lemma, Prestige Investigations, Mamaroneck, New York, will testify in connection with his October 24, 2013 video surveillance footage of plaintiffs.

(FAS)

Sarah Hunter/FAS- 101 West Louis Henna Boulevard #400, Austin, Texas 78728-1284
Glenn Miller- 230 MacDonald Drive Wayne, New Jersey

Anthony Lemma- Prestige Investigations Inc., P.O. Box 147, Mamroneck, New York 10543.

Dr. Stephen M. Horowitz, Willow Ridge Executive Office Park 750 Route 73 South, Suite 207 in Marlton, New Jersey 08053.

Dr. Maria C. Carta, 663 South White Horse Pike, Hammonton, New Jersey.

Dr. Philip R. Geron, 320 Lenox Avenue, Westfield, New Jersey.

Plaintiff objects to the following witnesses for the reasons stated:

1. Anthony Lemma and any video he attempts to utilize.
   a. Mr. Lemma was not identified in fact discovery and thus his testimony is barred pursuant to Fed.R.Civ.P. 26 and the numerous orders of the Court regarding fact discovery.
   b. No opportunity to depose Mr. Lemma was provided.
   c. Mr. Lemma failed to provide all video taken and falsely alleged that he was unable to provide other video due to weather conditions when the weather conditions did not impede the taping.
2. All liability witnesses named by FAS as no summary of their intended fact testimony is provided.
3. The liability witnesses whose names were not identified in Defendant FAS's R. 26 disclosures.
4. All damages witnesses of FAS and AHMS/WF as no summary of their intended fact testimony is provided.


11. **Expert Witnesses** (no expert will be permitted to testify at trial unless identified below and unless a summary of the witness' qualifications and a copy of the witness' report is attached hereto. Each party shall submit in writing to the Court and to opposing counsel any hypothetical questions to be put to an expert witness on direct examination).

   A. Plaintiff:

1.  Arthur M. Greenwald, DDS
2.  Luis Rizio, MD.
3.  Roy M. Lerman, MD
4.  David A. Bernstein, DPM
5.  Michael G. Cohan
6.  Colleen Pensa

B.  Defendant:

(FAS)

FAS objects to the testimony of plaintiffs' expert witness Michael G. Cohan.  Mr. Cohan is unqualified  to testify as to the supposed  duties  of FAS and further  relies upon  supposed "authorities"  which  do  not  apply  to  FAS  and,  in  fact,  are  not standards of care in any event.

C.  Defendant's expert and specialized lay opinion witnesses are:

(FAS)

(1) Dr. Stephen M. Horowitz,  Willow Ridge Executive Office Park 750 Route 73 South, Suite 207 in Marlton, New Jersey 08053.
(2)  Dr. Maria C. Carta, 663 South White Horse Pike, Hammonton, New Jersey.
(3) Dr. Philip R. Geron, 320 Lenox Avenue, Westfield, New Jersey.

(21st/Miller)

•       Maria Chiara Carta, M.D., ExamWorks, Inc., 4 Becker Farm Rd., Roseland, NJ 07068, who will testify in accordance with her April 7, 2014 narrative expert report and addenda.

•       Noubar A. Didizian, M.D., One Bala Plaza, Suite 621, Bala Cynwyd, PA 19004, who will testify in accordance with his November 14, 2013 narrative expert report.

•       Phillip R. Geron, D.M.D., Westfield Oral Surgery Associates, P.C., 320 Lenox Ave., Westfield, NJ 07090, who will testify in accordance with his November 18, 2013 narrative expert report.

•       Stephen M. Horowitz, M.D., Willow Ridge Executive Office Park, 750 Route 73 South, Suite 207, Marlton, NJ  08053, who will testify in accordance with his narrative expert report and addenda.

12. **Lay Opinions** (include a short explanation and legal citation for the Court's authority to permit the opinion. Objections shall also include a short explanation and legal citation in support of the opposition).[3]

    A. Plaintiff requests that the Court permit the following witness(es) to provide the following lay opinion(s):

    B. Defendant objects to the lay opinion testimony for the following reasons:

    C. Defendant requests that the Court permit the following witness(es) to provide the following lay opinion(s):

    D. Plaintiff objects to the lay opinion testimony for the following reasons:

13. **Depositions** (list by page and line all deposition testimony to be offered into evidence. All irrelevant matters and all colloquy between counsel must be eliminated. Deposition testimony to be used solely for impeachment purposes need not be listed).

    A. Plaintiff:

Readings from Deposition of Glenn Miller
5:7-9; 7:7-11; 9:12-17; 14:15 to 15:10; 15:14 -22; 22:25 to 23:5; 26:19 to 27:13; 27:22-23; 28:1-6; 36:12-17; 36:24-37:13; 44:22 to 46:6; 47:23 to 48:11; 48:20 to 49:12; 50:13 to 51:20; 52:2-22; 53:25 to 559 (ending with property); 57:7 to 13; 57:15 to 20; 59:12 to 60:12; 60:19 to 62:3; 63:25 to 667:19 (end with recall); 68:3-16; 68:19 to 69:14; 70:23-25; 79:14 to 80:13; 81:9 to 82:5; 82:8 to 13; 91:19 to 92:16; 96:22 to 97:18; 105:15 to 106:10; 109:11-13; 116:3 to 14 (stopping at yes); 119:14 to 120:6; 120:24 to 121:14; 122:22 to123:2

    B. Defendant:

(FAS)
Deposition of Anna Charlton, June 19, 2013, 26-29:1-25; 42-43:14-6;  47:6-12; 50:10-22; 64-68:4-2; 93-96:16-2; 102:6-10; 112-113:17-3.
Deposition of Glenn Miller, July  11,2013, 44-45:6-23; 51:11-21; 53-54:21-8;  64-65:7-1; 101:13-19 ; 108-109:1-10 .
Deposition of Michal Cohan, April 10, 2014, 22-23:14-9; 25-26:8-9; 33-34:14-2; 36-37:9-5; 55:5-14; 56-57:8-6; 61-63:11-4; 64-65:22-23; 66:10-19; 70:10-19.

Plaintiff objects to the deposition testimony set forth above for the reasons stated:

    Plaintiff objects to the following readings from the transcript of Anna Charlton;
    50:10-22     -- should end at 51:9 for completeness
    64:4-68:2   -- confusing

---

[3] If the parties' position(s) cannot be set forth succinctly, then issues concerning lay opinion testimony should be addressed in a motion in limine.

Plaintiffs object to the reading of the deposition transcript of an expert such as Mr. Cohan without confrontation.

14. **Exhibits** (except for exhibits solely for impeachment purposes or the need for which could not reasonably have been foreseen, only exhibits set forth on the exhibit list may be introduced at trial.  The exhibits are to be pre-marked and must include exhibit stickers.  Each party must prepare a copy of all exhibits that they expect to use at trial for the Judge, Deputy Clerk, Court Reporter, and opposing counsel.  If counsel intends to show exhibits to the jury, sufficient copies should be available to provide each juror with a copy; alternately, enlarged or projected copies of the exhibits may be used).

   A.  Plaintiff:  See attached Exhibit List.

P1    Dental records and report of Dr. Buxton with various dates
P2    Medical records and report of Dr. Fras with various dates
P3    Medical records and report of Dr. Lubeck regarding the MRI with various dates
P4    Medical records and reports of Drs. Lubeck and Fras regarding the Hand Study with various dates
P5    Dental records and report of Dr. Halbert with various dates
P6    Medical records and report of Dr. Lerman with various dates
P7    Medical records and report of Dr. Rosenfeld with various dates
P8    Police Report from South Orange Police dated January 17, 2010 regarding activity at the Property
P9    Police Report from South Orange Police dated July 4, 2010 regarding activity at the Property
P10   Glenn Miller's Certified Answers to Interrogatories 2, 13, 14, 15, 16
P11   Photographs of bathroom taken on August 17, 2010 by Gary Francione
P12   Photographs of Anna Charlton showing abrasions and visible injuries as a result of accident of August 17, 2010 taken in August 2010 by Gary Francione
P13   Demands for Admissions sent to Glenn Miller which were not responded to within the time set forth under Fed.R.Civ.P. 36.
P14   Tax record document for the Property showing ownership at time of accident
P15   Vendor Qualification Packets
      P15A   Vendor Qualification Package for Accuratech
      P15B   Vendor Qualification Package for Dirty Demolition
P16   Pooling Agreement between WF and AHMS
P17   FAS's Certified Answers to Interrogatories signed on July 19, 2012 No. 8
P18   FAS's Service History for the Property dated August 21, 2012
P19   AHMS's Certified Answers to Interrogatories signed on September 28, 2012 No 15
P20   WF's Certified Answers to Interrogatories signed on March 29, 2013 Nos. 12-16
P21   Expert report of Dr. Bernstein dated September 18, 2013
P22   Expert report of Michael Cohan dated November 25, 2013
P23   Expert report of Dr. Greenwald dated November 22, 2013
P24   Expert report of Dr. Lerman dated August 12, 2013
P25   Expert report of Coleen Pensa dated September 29, 2013

P26    Expert Reports of Dr. Rizio
  P26A   Report dated November 5, 2013
  P26B   Rebuttal report dated March 24, 2014
P27    Photographs of Anna Charlton's foot post-bunionectomy (A-F)
P28    P28A   Work order from FAS to Accuratech
  P28B   Work order from FAS to Dirty Demolition
P29    Handbook for the Office of the Comptroller of the Currency, current ed., September, 2013
P30    Documents evidencing industry standard in the Real Estate Sales Industry:
  P30A   National Association of Realtors Pathways to Professionalism
  P30B   National Association of Realtors Code of Ethics and Standards of Practice
P31    Medical Bills
P32    FAS's signs to vendors which must be posted identifying that FAS maintains the premises and providing contact information for FAS regarding maintenance issues
P33    Certified Weather Report for the vicinity of Bala Cynwyd, PA on Nov. 7, 2013
P34    Notice provided by FAS regarding its responsibility for property "maintenance"
P35    Additional payments for dental work by Aetna dated March 29, 2016

Defendant Glenn Miller/Century 21 objects to P 33 as a hearsay document

All Defendants object to P8 & P9 as there is a lack of foundation, lack of authentication, and hearsay. Further, Plaintiffs did not identify the police officers during the applicable discovery period or in accordance with FRCP 26.

  B.  Defendant:  See attached Exhibit List.

(FAS)

  1.  Vendor Qualification Packet for Dirty Demolition Services, LLC
  2.  Vendor Qualification Packet for Accuratec Inc.
  3.  FAS work orders for the location
  4.  Dirty Demolition invoices to FAS for the property
  5.  Report of Dr. Maria Carta dated April 7, 2014
  6.  Report of Dr. Maria Carta dated June 4, 2014
  7.  Report of Dr. Maria Carta dated July 28, 2014
  8.  Report of Dr. Philip Geron dated November 18, 2013
  9.  Report of Dr. Stephen Horowitz dated April 2, 2014
  10. Report of Dr. Stephen Horowitz dated July 11, 2014
  11. Video surveillance footage October 23, 2013 by Prestige Investigations, Inc.
  12. The Office of the Comptroller of the Currency Handbook dated September 2013
  13. Plaintiff's handwritten drawing June 19, 2013
  14. Photographs marked Charlton 3 June 19, 2013
  15. Certified answers to Interrogatories on behalf of Century 21 Gemini and Glenn Miller
  16. Records of Alice Amsterdam, DMD dated September 25, 2003

17. Dental records of Judy Buxton, DMD dated October 23, 2006 through April 20, 2010

(21st/Miller)

DC1   Plaintiff's certified answers to interrogatories
DC2   Color Photographs of subject property
DC3   Prestige Investigations' October 23, 2014 surveillance DVD
DC4   REO Management-Century 21 contract
DC5   Dr. Wehbe's medical records
DC6   Dr. Halbert's medical records
DC7   Dr. Fras's medical records
DC8   Main Line Diagnostic Imaging MRI reports
DC9   Expert Report of Dr. Maria Carta, April 7, 2014
DC10 Expert Report of Dr. Maria Carta, June 4, 2014
DC11 Expert Report of Dr. Maria Carta, July 28, 2014
DC12 Expert Report of Dr. Philip Geron, November 18, 2013
DC13 Expert Report of Dr. Stephen Horowitz, April 2, 2014
DC14 Expert Report of Dr. Stephen Horowitz, July 11, 2014
DC15 Expert Report of Dr. Noub Didizian, November 14, 2013
DC16 Plaintiff's handwritten diagram, dated June 19, 2013
DC17 Photographs marked "Charlton 3" on June 19, 2013
DC18 Dr. Judy Buxton's dental records from 2006-2010
DC19 Real Estate Listing for 379 Montrose Ave., South Orange, New Jersey
DC20 Defendant American Home Mortgage Servicing, Inc. March 25, 2009 letter noting they are the owners of the Property due to foreclosure sale on 7/8/09; and that Field Asset Services (FAS) represents them for property preservation, including but not limited to, utility hookups, re-keying, and securing of the property.
DC21 Plaintiffs' deposition transcripts, dated June 19, 2013

Plaintiff objects to the introduction of defendant's exhibits (set forth number of exhibits and grounds for objection):

1.      FAS Exhibit 11, 21st Exhibit 3. This video was taken and produced after the end of fact discovery in violation of Fed.R.Civ.P. 26 and the applicable case management orders.  Plaintiffs were unable to depose the videographer, name witnesses to rebut, or expose his fraudulent conduct regarding the "first" attempt at surveillance.
2.      FAS Exhibit 4.  These documents are not identified with specificity and cannot be authenticated.
3.      FAS Exhibits 6, 7 and 10; Century 21 Exhibits 10, 11 and 14.  These reports were provided after the conclusion of expert discovery without request to extend discovery or permission from the Court.
4.      Century 21 Exhibit 2 as it is vague and it is impossible to determine which color photographs are referred to.

18

5.      Century 21 Exhibit 21 fails to delineate the specific page and line references as required by this Order and they failed to provide any transcript readings in their offerings for the Rule 16 conference.

15. **Legal Issues**

    A.  Plaintiff:

        A.  Plaintiffs were business invitees under New Jersey law.

        B.  WF as the owner of the property had a non-delegable duty to ensure that the Property was inspected and made safe from dangerous conditions.

        C.  AHMS, pursuant to a contractual obligation with WF, also had a duty to ensure that the Property was inspected and made safe from dangerous conditions.

        D.  FAS, pursuant to their duty as "property managers" had a duty to inspect the Property and make sure that any dangerous conditions were made safe or an appropriate warning given.

        E.  Glenn Miller and Century 21 had a duty to inspect the Property, warn of potential dangers.

        F.  Glenn Miller had a duty to stop his clients, including the Plaintiffs, from entering the property without being accompanied by him.

        G.  Plaintiff's injuries are proximately caused by the breaches of duty by the Defendants.

        H.  Whether WF can utilize documents which were requested during fact discovery but not produced.  Plaintiffs again requested copies after fact discovery ended but WF/AHMS refused to provide copies of these documents because fact discovery ended and Plaintiffs did not move during fact discovery to compel their production. WF/AHMS utilized the document – the contract between AHMS and FAS – in regard to the pending summary judgment motions.

        I.  The New Jersey Comparative Negligence laws apply but do not bar recovery as a matter of law.

    B.  Defendant:

- FAS denies any legal duty owed to the plaintiff.
- FAS disputes having any legal or contractual right to perform any services at the property without the specific written approval of the owner.
- FAS denies any knowledge or notice of any unsafe condition.
- FAS denies the qualifications of the plaintiff's liability expert to comment upon its duty of care.
- FAS denies that the plaintiffs' liability expert, Michael Cohan has authority for any of the opinions included in his narrative report that he testified to at deposition.
- FAS disputes directly or proximately causing any harm to the plaintiff and denies her damages claims.
- FAS is entitled to indemnification by its codefendants as well as contribution.
- FAS asserts that the plaintiff's comparative negligence bars her recovery.

19

(Century 21/Miller)

Adopt the above legal issues articulated by co-defendants. In addition, defendant Century 21/Miller assert that the plaintiff's surveillance video/DVD is plainly admissible pursuant to the New Jersey Supreme Court's seminal holding in Jenkins v. Rainner, 69 N.J. 50 (1976), and its progeny.  Further, Magistrate Hammer denied plaintiffs' application to bar admission of the surveillance video footage, without prejudice, on March 20, 2014.

16. **Trial Brief**:  two (2) weeks before the trial date, each party shall submit a trial brief or memorandum to the Court and to opposing counsel.  The submission must be in accordance with Local Civil Rule 7.2, with citations to authorities and arguments in support of each party's position on all disputed issues of law.

17. **Neutral Statement of the Case**:  the parties shall confer as to a neutral statement of the case.  Two (2) weeks before the trial date, the parties shall submit a joint neutral statement of the case to the Court, in both hard copy and electronic (Microsoft Word) form.  The neutral statement of the case shall be no longer than two (2) typewritten, double-spaced pages.  The purpose of the statement is to orient the jury panel as to the type of case it will hear.

18. **Voir Dire**:  the parties are directed to obtain from Judge Vazquez's Deputy Clerk, the Court's proposed and preferred voir dire questions.  If there are any objections to the proposed voir dire questions, counsel should immediately advise, in writing, the Court and opposing counsel.  If either party believes that additional voir dire questions should be submitted, the parties are required to confer and then submit the additional requested questions to the Court, in both hard copy and electronic (Microsoft Word) form, two (2) weeks before the trial date.

19. **Jury Instructions**:  the parties should first review the relevant model instructions (either from the Third Circuit or from the relevant state if applicable).  If no model instruction exists, the parties should then look to a recognized source on form instructions, such as O'Malley, Grenig & Lee.  The parties are then to exchange proposed instructions and confer in a good faith attempt to resolve any disputes.

Two (2) weeks prior to the Trial Date, the parties are to jointly submit to the Court, in both hard copy and electronic (Microsoft Word) form, the following:

A. All instructions to which the parties agree.  To the extent the instructions have been changed from the relevant model or form instructions, such changes must be indicated by redline.

B. All instructions to which the parties do not agree, either in whole or in part.  Each party's proposed instruction or language must be demarcated by two different color

20

redlines.  Legal support for either party's proposal must be set forth in a footnote, stating the legal source and a parenthetical explanation.

20. **Verdict Sheet**:  The parties are to confer on a verdict sheet and submit the joint verdict sheet to the Court, in both hard copy and electronic (Microsoft Word) form, two (2) weeks before the trial date.

21. **Non-Jury Trials**: (if the matter is a non-jury trial, then paragraphs 17 – 20 do not apply). One (1) week before the Trial Date, each party shall submit to the Court and to opposing counsel proposed Findings of Fact and Conclusions of Law, in both hard copy and electronic (Microsoft Word) form.  There is reserved to the parties the right to submit additional proposed Findings of Fact and Conclusions of Law during the course of the trial on those matters that cannot reasonably be anticipated.

22. **Miscellaneous** (set forth any other matters which require action by, or should be brought to the attention of, the Court).

AMENDMENTS TO THIS FINAL PRETRIAL ORDER SHALL NOT BE PERMITTED UNLESS THE COURT DETERMINES THAT MANIFEST INJUSTICE WOULD RESULT IF THE AMENDMENT IS DISALLOWED.


 /s/ Henry F. Furst, Esq._____
Henry F. Furst, Esq.
Attorney for Plaintiffs: Anna Charlton and Gary Francione


  /s/ Keith Harris, Esq._____
Keith Harris, Esq.
Attorney for Defendant: Field Asset Services



  /s/ Mario C. Colitti, Esq._____
Mario C. Colitti, Esq.
Attorney for Defendants: Glenn Miller and Century21 Gemini, LLC



Dated: June 17, 2016                    _____
                                        (**MARK FALK/JAMES B CLARK, III**)
                                        **UNITED STATES MAGISTRATE JUDGE**