**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANNA CHARLTON & GARY FRANCIONE,<br><br>*Plaintiffs*,<br><br>v.<br><br>WELLS FARGO BANK, N.A. et al.,<br><br>*Defendants*. | Civil Action No. 11-6572<br><br>**OPINION** |

### John Michael Vazquez, U.S.D.J.

For the reasons stated below, the Court determines that the video surveillance evidence in the above matter is not admissible at trial. Despite the fact that the evidence was disclosed late, the Court originally exercised its discretion and ruled that the video would be admissible. However, in fairness to Plaintiffs, the Court also permitted them to take limited discovery concerning the surveillance. During this discovery process, defense counsel has defied the Court's Order, attempted to circumvent another ruling, taken conflicting positions, and generally expressed a sentiment that he is unwilling to work in good faith on the Court-ordered discovery. As a result, the Court is again exercising its discretion and ruling that the video is inadmissible, thereby mooting any outstanding discovery issues.

A.  FACTUAL AND PROCEDURAL HISTORY

This is a personal injury case. On August 16, 2010, Plaintiff Anna Charlton allegedly slipped while viewing a property in South Orange, New Jersey. The legal representation of Defendants Century 21 Gemini, LLC, and Glenn Miller (collectively "Century 21") has been

provided by their insurance company, Liberty Mutual Insurance Group ("Liberty Mutual"). Liberty Mutual has also paid for Century 21's counsel, and counsel's letterhead indicates that the lawyers of the firm are "[e]mployees of Liberty Mutual Insurance Group." Liberty Mutual hired an investigator, Anthony Lemma, to conduct video surveillance of Ms. Charlton after the close of the discovery. The surveillance resulted in a video dated October 23, 2013 ("October 23 video"). Century 21 contends that this evidence demonstrates that Ms. Charlton's walk and gait are not as impaired as she claims, specifically in regards to her need for a cane. Mr. Lemma also conducted surveillance November 7, 2013, but asserted that he was unable to video Ms. Charlton because it was raining heavily. Plaintiffs contest this assertion, alleging that the weather conditions were not nearly as severe as Mr. Lemma stated.

In preparation for trial, Plaintiffs filed a motion *in limine* to keep the October 23 tape out of evidence. D.E. 170. Plaintiffs argued that allowing the video to be used as evidence violated the Federal Rules of Civil Procedure and a prior Court Order. Plaintiffs also maintained that the video should be barred because it encompassed attorney-client privileged information; Plaintiffs' counsel, Henry Furst, Esq., was present for part of the surveillance of Ms. Charlton and appears in a portion of the video. The October 23 video does not contain sound so discussions between Mr. Furst and Ms. Charlton cannot be heard. *Id.* Century 21 and Defendant Field Asset Service ("FAS") opposed the motion, and the Court held oral argument. D.E. 171, 172, 181. On September 22, 2016, the Court issued an Order which permitted Century 21 to use the October 23 tape at trial but required the redaction of certain portions in which Plaintiffs' counsel and Ms. Charlton were standing still and speaking. D.E. 182. The Court also permitted the parties to take limited discovery as to Mr. Lemma's surveillance, including the weather conditions on November 7, 2013, since Lemma's surveillance occurred and was disclosed after the close of fact discovery.

*Id.* Century 21 declined to take additional discovery. Plaintiffs' counsel, however, decided to depose Mr. Lemma and also issued him a subpoena to produce documents.

On October 11, 2016, Century 21's counsel, Mario Colitti, Esq., wrote to the Court and objected to a subpoena that Plaintiffs served on Mr. Lemma, claiming that it was a "classic fishing expedition" and the information sought was "overbroad" and "irrelevant." D.E. 184. As noted, Mr. Colitti's firm letterhead clearly states that counsel are "[e]mployees of Liberty Mutual Insurance Group." *Id.* Mr. Colitti indicated that he wished to file a motion to quash the subpoena but sought guidance from the Court. *Id.* Mr. Furst responded that the information sought was relevant to Mr. Lemma's credibility and the facts surrounding the surveillance. D.E. 188. In an effort to expedite the issue, the Court did not require a formal motion. Instead, the Court issued an order on October 14, 2016, which struck the first category of documents sought from the subpoena. The Court permitted the remainder of the categories to stand as they did not implicate any applicable privilege and appeared reasonably calculated to lead to the discovery of admissible evidence. D.E. 186. Generally speaking, the categories related to Mr. Lemma's payments from Liberty Mutual, surveillance invoices, documents related to Plaintiffs, and Mr. Lemma's surveillance equipment. *Id.* No party sought reconsideration of the Order, nor did any party appeal.

Thereafter, Mr. Lemma was deposed. He did not, however, produce all the information sought by the subpoena. Pertinent to this matter, Mr. Lemma did not produce his 1099s or invoices to Liberty Mutual. Mr. Lemma apparently testified that he did have such information, including 1099s and possibly over one hundred invoices. The 1099s were reportedly held by his accountant. Mr. Lemma apparently indicated that he would produce such information after the deposition, but he did not.

On November 3, 2016, Mr. Colitti wrote to Plaintiffs' counsel and copied the Court. D.E. 187. In the letter, Century 21's counsel stated that the second and third items listed in the Lemma subpoena would *not* be produced. Among other things, counsel indicated that the pertinent law did not support disclosure of Mr. Lemma's tax returns (although tax returns were not sought by the subpoena and the Court did not order production of such on October 14). *Id.* Mr. Colitti again concluded that there was "no legal justification" for the demands in the subpoena, which was a "fishing expedition." *Id.* Again, Mr. Colitti took this position although the Court previously found the pertinent information to be discoverable and ordered it produced.

Plaintiffs' counsel responded. At the outset, Mr. Furst noted that Century 21's attorney had not engaged in a meet and confer, as evidenced by the copying of the Court on the November 3 correspondence. D.E. 188. Plaintiffs' counsel also noted that Mr. Lemma had indicated that Mr. Colitti was also acting as his (Lemma's) lawyer. *Id.* As to the substance of the November 3 letter, Plaintiffs' counsel stated that the financial information sought was relevant to Mr. Lemma's potential bias and that Mr. Lemma's testimony as to his viewing of Ms. Charlton on November 13, 2013 was questionable at best since certified weather reports contradicted Mr. Lemma's position. Plaintiffs' attorney asked that the October 23 tape be suppressed as a result of the failure to follow the Court's October 11 Order. *Id.*

As a result, the Court held an on-the-record telephone conference with counsel on November 9, 2016. Mr. Colitti acknowledge that he had not made a motion for reconsideration, nor appealed, the Court's October 11 Order concerning Mr. Lemma's subpoena. The Court inquired as to what basis Mr. Colitti had for deciding that the Court's October 11 Order was not going to be followed. As to lack of "legal justification," the Court also asked whether the October 11 Order qualified as an appropriate legal basis. The Court also queried Mr. Colitti as to why he

4

had cited cases concerning tax returns when the Court had not ordered those to be produced. Counsel had no satisfactory answer in response to any of these queries. The Court then strongly cautioned Mr. Colitti about defying the Court's orders in the future. The Court emphasized that the appropriate course of redress when Mr. Colitti disagreed with the Court's rulings was either to file a motion for reconsideration or, alternately, seek leave to appeal. However, counsel's *sua sponte* decision not to follow the Court's orders would not be countenanced.

Plaintiffs' counsel inquired as to whether the information sought from Mr. Lemma could instead be produced by Liberty Mutual. Mr. Colitti strenuously objected, noting that Liberty Mutual had not been served with the subpoena and that Liberty Mutual was not a party to the case.

In addition, Mr. Colitti once again said that the information was irrelevant. The Court explained that it was not making a determination as to the information's admissibility at trial. Instead, the Court was ordering that the information be produced in discovery because it could, at a minimum, lead to the discovery of admissible evidence. The Court further clarified that once the information was produced, the parties would be free to argue its admissibility, at which time the Court would render a decision in light of the relevant facts.

During the telephone conference, Mr. Colitti also stated that he did not represent Mr. Lemma. This claim, that Mr. Colitti did not represent Mr. Lemma, was repeated verbally several times by Mr. Colitti. Mr. Colitti, however, sent several letters to the Court apparently on behalf of Mr. Lemma. D.E. 184 (objecting to the subpoena served upon Mr. Lemma and requesting guidance on filing a motion to quash); D.E. 187 (refusing to produce information subpoenaed from Mr. Lemma); D.E. 193 (indicating that Defendants had complied with the order addressed to Mr. Lemma and indicating that Mr. Lemma was providing a certification as required by the Court).

Following the conference, the Court entered an Order on November 9, 2016. D.E. 191. The Court did not grant Plaintiffs' request to suppress the October 23 video. The November 9 Order required Mr. Lemma to comply with the subpoena by November 14, 2016. The Order further indicated that if he did not possess the information sought, Mr. Lemma was to certify that he conducted a reasonable search and describe the search that he undertook, including the relevant dates of any search. *Id.*

Mr. Lemma did not comply with the November 9 Order. Instead, the Court received another round of letters from counsel. On November 17, 2016, Plaintiffs' counsel indicated that it had received nothing from Mr. Lemma and, instead, Liberty Mutual, provided certain 1099s that it had issued to Mr. Lemma. A representative of Liberty Mutual also provided a certification regarding the production. Plaintiffs' attorney again asked that the October 23 video be suppressed. D.E. 192. Century 21's lawyer replied the next day. Mr. Colitti claimed that **"[d]efendants have fully complied with the Court's November 9 order[.]"** D.E. 193. (emphasis in original). As noted, the November 9 Order was directed to Mr. Lemma, not Liberty Mutual, due in part to Mr. Colitti's strong objections during the November 9 conference as to whom he represented. Mr. Colitti continued that Mr. Lemma was unavailable on November 14 due to assignments but provided his certification the day before, on November 17. D.E. 193. Mr. Colitti then indicated that Century 21 was amending the pre-trial order to name Mr. Furst as a potential fact witness in the case. *Id.* Mr. Furst filed a response on November 21, 2016. D.E. 195. Among other things, Plaintiffs' counsel noted that Mr. Lemma's November 17 certification did not comply with the November 9 Order and was drafted by defense counsel, despite Mr. Colliti's claims that he did not represent Mr. Lemma. *Id.*

6

The Court held yet another on-the-record telephone conference with counsel on December 1, 2016. The Court first asked Mr. Colitti why he added Mr. Furst to the witness list. Mr. Colitti replied that since the Court ordered that the portions of the video in which Mr. Furst appeared be redacted from the October 23 video, Mr. Furst was now a fact witness as to what occurred during those redacted portions. The Court expressed exasperation, noting that Mr. Colitti had previously defied one of the Court's orders and was now engaging in a transparent "end run" around the Court's ruling concerning the October 23 video. The Court ruled that Mr. Furst would not be a witness for such purposes. The Court once again cautioned Mr. Colitti about the necessity of following the Court's rulings and seeking redress through the appropriate avenues if Mr. Colitti disagreed. The Court once again explained that Mr. Colitti was not free to disregard the Court's decisions.

As to Mr. Lemma's failure to comply with the November 9 Order, Mr. Colitti again acknowledged that he had not sought a reconsideration or appeal of the Order. Practically speaking, the Court asked why neither Mr. Colitti or Mr. Lemma sought a short continuance before the due date of November 14, 2016 because Mr. Lemma was not available. The Court noted that it would have a granted a short extension if Mr. Lemma had pre-existing business that prevented him with meeting the November 14 deadline. Moreover, the Court inquired as to what had prevented Mr. Lemma from gathering the information before November 14 if he knew that he would be unavailable that day. Not receiving a satisfactory explanation, the Court issued an Order to Show Cause on December 2, 2016, which required Mr. Lemma to appear on December 13, 2016. D.E. 198. Mr. Lemma was ordered to show cause as to why he had not complied with the Court's November 9 Order and to also bring copies of any information that he possessed that was responsive to the subpoena. *Id.* The Court further indicated that it would reserve decision on

Plaintiffs' motion to exclude the October 23 video until the Order to Show Cause matter was resolved.

On December 13, 2016, Mr. Lemma appeared along with all counsel. Mr. Lemma first explained that he has asked his accountant for copies of the responsive 1099s and that his accountant had requested to receive them from the IRS.[1] Although he apparently testified at his deposition that he possessed invoices submitted to Liberty Mutual, Mr. Lemma represented during the hearing that he was mistaken and that he actually destroyed the invoices as cases resolved. Instead, Mr. Lemma produced a spreadsheet which contained information concerning the invoices that he had delivered to Liberty Mutual during the time period provided in the subpoena.

Mr. Furst, in response, asked if Liberty Mutual had copies of the invoices. Mr. Colitti stated that Liberty Mutual was not a party to the case, that the case was ready to be tried, and that such information had no chance of ever being admissible. The Court explained that while Mr. Colitti may feel that the case is ready to be tried, that decision is left to the Court. The Court further stated that the case is not ready to be tried because the discovery issue has not been resolved to the Court's satisfaction. The Court reiterated that it was trying to find a sensible compromise so that the information could be exchanged and trial could begin. The Court also, once again, clarified that it was not making any determination as to admissibility at that juncture. Instead, the Court was attempting to get the relevant information to Plaintiffs. Once Plaintiffs had an opportunity to review the information, the Court would rule upon admissibility if either party made the necessary motion. The Court, however, emphasized that a pecuniary relationship between Mr.

---

[1] Although Mr. Lemma apparently testified at his deposition that his accountant kept copies of the 1099s, Mr. Lemma explained on December 13 that his accountant had actually destroyed them. If neither Mr. Lemma nor his accountant had copies of the 1099s, the Court would not have required Mr. Lemma to retrieve the information from the IRS, but Mr. Lemma did so of his own accord.

8

Lemma and Liberty Mutual certainly had the potential to be admissible, if for nothing more than cross-examination, depending upon the nature of the information. Mr. Colitti did not appear to comprehend the Court's comments, and instead argued that such information would never be admissible.

B.  ANALYSIS

The Court is at a loss and does not foresee any successful resolution of the discovery issues. At the outset, the Court is surprised, to say the least, that so much time and effort has been expended on this issue. The information sought in the subpoena should have been produced before Mr. Lemma's deposition and this case should be ready for trial.

In initially deciding whether the October 23 tape should be barred from use at trial the Court exercised its discretion under the *Meyers v. Pennypack* factors, which are used to determine whether evidence should be excluded as a discovery sanction pursuant to Fed. R. Civ. P. 37. *Astrazeneca AB v. Mut. Pharm. Co., Inc.*, 278 F. Supp. 2d 491, 504 (E.D. Pa. 2003). As discussed in the Court's motion *in limine* Order (D.E. 182), the factors are as follows: (1) the prejudice or surprise in fact of the party against whom the excluded evidence would have been offered; (2) the ability of that party to cure the prejudice; (3) the extent to which allowing such evidence would disrupt the orderly and efficient trial of the case or of other cases in the court; (4) any bad faith or willfulness in failing to comply with the court's order; and (5) the importance of the excluded evidence. *Astrazeneca AB*, 278 F. Supp. 2d at 504 (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)). At that time, the Court determined that excluding the evidence as a sanction was not justified. D.E. 182. Mr. Colitti's conduct, however, has changed the Court's analysis. Mr. Colitti has refused to comply with numerous court orders, starting with his initial decision to surreptitiously take video surveillance of Plaintiff after the close

of discovery. *Cf. Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 104-06 (D.N.J. 2006) (granting motion to strike previously unproduced discovery as a discovery sanction pursuant to the *Meyers v. Pennypack* factors). Moreover, this unwillingness to comply with the Court's directions has continued despite numerous warnings from the Court.

Mr. Colitti defied the Court's October 11 Order, determining that certain information would not be produced and that there was no legal justification to produce. A court order as a basis for legal justification should be self-evident. Mr. Colitti then attempted to circumvent the Court's ruling concerning the redaction of Mr. Furst from the October 23 video: he put Mr. Furst on his witness list. When asked why, Mr. Colitti frankly admitted that Mr. Furst was now a fact witness to the events that had been redacted from the video. Mr. Colitti does not appear to be able to appreciate the difference between his advocacy position (the information is not discoverable) and the Court's determination (that it is). Moreover, when Mr. Colitti disagrees with the Court's orders, he does not seek appropriate redress, such as by way of a motion for reconsideration.

Although of lesser importance, Mr. Colitti has continued to advocate on Mr. Lemma's behalf, including writing Mr. Lemma's certification and submitting numerous letters to the Court, while at the same time maintaining that he does not represent Mr. Lemma. Mr. Lemma says otherwise. But regardless of whether Mr. Colitti is actually representing Mr. Lemma, Mr. Colitti is responsible for Mr. Lemma's actions in this litigation. New Jersey Rule of Professional Conduct 5.3 provides that "a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person' conduct is compatible with the professional obligations of the lawyer." Further, under RPC 5.3 a lawyer can be held responsible for the nonlawyer's improper actions. *See In re Complaint of PMD Enters. Inc.*, 215 F. Supp. 2d 519

10

(D.N.J. 2003) (concluding that attorney violated RPC 5.3 for his failure to properly oversee investigator's work).

Moreover, Mr. Colitti argued strenuously on November 9 that Liberty Mutual could not be required to produce information. Despite the dubious validity of this proposition, *see, e.g., Meighan v. TransGuard Ins. Co. of Am., Inc.*, 298 F.R.D. 436, 446 (N.D. Iowa 2014) (ordering insurance company to produce surveillance video); *Richardson v. Cuccinello*, No. 09-1543, 2009 WL 4280735, at *1 (M.D. Pa. Nov. 30, 2009) (refusing to quash subpoena seeking claim file that was served on defendant's insurance company), Mr. Colitti then caused Liberty Mutual to produce such information after the Court ordered that it be produced by Mr. Lemma. Then, on December 13, Mr. Colitti fell back to the position that Liberty Mutual does not have to produce anything because they are not a party. Liberty Mutual cannot have it both ways. Mr. Colitti and his "captive law firm" are essentially in-house counsel for Liberty Mutual. *See, e.g., Consolidated Edison Co. of N.Y., Inc. v. Lexington Ins. Co.*, No. 14-6547, 2015 WL 4611206, at *2 (S.D.N.Y. July 30, 2015) (equating captive law firm with in-house counsel); *Hartford Cas. Ins. Co. v. A & M Assocs., Ltd.*, 200 F. Supp. 2d 84, 90 (D.R.I. 2002) (same). As in-house counsel, Mr. Colitti, his law firm, and Liberty Mutual are clearly subject to all discovery provisions of the Federal Rules of Civil Procedure. *See, e.g., Rowe v. E.I. DuPont de Nemours & Co.*, 2008 WL 4514092, at *7-9 (D.N.J. Sept. 30, 2008) (denying motion for a protective order as to non-legal communications between in-house counsel and several corporate employees). Liberty Mutual cannot direct the defense of this case for Century 21, including hiring Mr. Lemma, and take the position that its relevant and unprivileged documents are not subject to discovery.

More fundamentally, Liberty Mutual has acted as an agent of Century 21 in this case as to matters that are discoverable. Liberty Mutual has undertaken the defense for Century 21. In doing

11

so, Liberty Mutual hired Mr. Lemma to conduct surveillance of Ms. Charlton. Once Liberty Mutual voluntarily took these steps, it became an agent of Century 21 at least as to the issue of surveillance and any related discovery. *See, e.g., Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617, 629 (N.D.Okla. 2009) ("A party is charged with knowledge of what its agents know, or what is in records available to it, or even, for purposes of Rule 33, information others have given it on which it intends to rely in its suit. A party must disclose facts in its attorney's possession even though the facts have not been transmitted to the party." (quoting 8B Wright & Miller, § 2177)).

Mr. Colitti does not appear to appreciate the difference between discoverable information and admissible evidence. The video arose because Century 21 decided to video Ms. Charlton after the close of fact discovery. The Court originally permitted the October 23 video to be introduced, but Plaintiffs raised a legitimate concern as to why Mr. Lemma failed to videotape on the later date of surveillance, November 7, 2013; Mr. Lemma claims that it was raining too heavily to videotape. Critically, Plaintiffs have information which contradicts Mr. Lemma's claim. *See, e.g.*, D.E. 188-1 (certified weather report from November 7, 2013). The Court understands why this failure to video may be important to Plaintiffs. Presumably, Plaintiffs want to be able to argue to the jury that the reason that the videotape was not taken on November 7, 2013 is because Mr. Lemma observed Ms. Charlton ambulating in a manner consistent with her claimed injuries. If true, then the failure to videotape could be used to counteract any impact of the October 23 video, which Century 21 and FAS want to introduce to show the opposite – that Ms. Charlton is not as physically limited as she claims.

To this end, Mr. Lemma's invoices may be relevant at trial. The invoices could demonstrate that this was the only time that Mr. Lemma failed to take video surveillance. Conversely, the invoices could demonstrate that Mr. Lemma regularly failed to take video

surveillance despite the weather. If true, Plaintiffs may have a plausible argument that this was a common practice engaged in by Mr. Lemma on behalf of Liberty Mutual, that is, intentionally not recording evidence if it was determined to be unhelpful to the defense. Similarly, Liberty Mutual's payments to Mr. Lemma may be relevant at trial to potential bias. *See, e.g., In re Tylenol (Acetaminophen) Marketing, Sales Practices & Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2016 WL 1569719, at *9-10 (E.D. Pa. Apr. 19, 2016) (concluding that evidence relating to employee compensation was admissible and relevant to show employees' bias or conflict of interest); *Ala. Elec. Pension Fund v. Pharmacia Corp.*, No. 03-1519, 2005 WL 6429128, at *1 (D.N.J. Aug. 5, 2005) (concluding that defendants' payments to authors for research and report "is relevant . . . because they may expose bias in the Defendants' research of their product").

Century 21 disagrees with the Court's analysis, which it has a right to do. But it cannot do so in disregard of the Court's rulings and attempts to reach a reasonable resolution of issues. Century 21 undertook the surveillance and produced the October 23 video after the close of fact discovery. Any resulting delay in the discovery process was due to its own actions. Given the actions and comments by Century 21's counsel, as set forth above, the Court does not reasonably believe that continued attempts to resolve this issue will bear fruit. As a result, the Court is exercising its discretion pursuant to the *Meyers v. Pennypack* factors, and the October 23 video is excluded from evidence. This obviates the need to call Mr. Lemma as witness and the outstanding discovery issues are now moot.

An appropriate form of Order accompanies this Opinion.

Dated: December 19, 2016

JOHN MICHAEL VAZQUEZ, U.S.D.J.